GRANNY GOOSE FOODS, INC., ET AL. *v.* BROTHER-
HOOD OF TEAMSTERS & AUTO TRUCK DRIV-
ERS, LOCAL NO. 70 OF ALAMEDA COUNTY,
INTERNATIONAL BROTHERHOOD OF TEAM-
STERS, CHAUFFEURS, WAREHOUSEMEN &
HELPERS OF AMERICA

No. 72–1566.  Argued January 8, 1974—
Decided March 4, 1974

424

MARSHALL, J., delivered the opinion of the Court, in which DOUGLAS, BRENNAN, WHITE, and BLACKMUN, JJ., joined. REHNQUIST, J., filed an opinion concurring in the judgment, in which BURGER, C. J., and STEWART and POWELL, JJ., joined, *post*, p. 445.

*George J. Tichy II* argued the cause for petitioners. With him on the briefs was *Wesley J. Fastiff.*

*Duane B. Beeson* argued the cause for respondent. With him on the brief were *Victor J. Van Bourg* and *Bernard Dunau.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case concerns the interpretation of 28 U. S. C. § 1450,[1] which provides in pertinent part: "Whenever any action is removed from a State court to a district court of the United States . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." The District Court held respondent Union in criminal contempt for

---

[1] Title 28 U. S. C. § 1450:

"Whenever any action is removed from a State court to a district court of the United States, any attachment or sequestration of the goods or estate of the defendant in such action in the State court shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the State court.

"All bonds, undertakings, or security given by either party in such action prior to its removal shall remain valid and effectual notwithstanding such removal.

"All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

violating a temporary restraining order issued by the California Superior Court on May 18, 1970, prior to the removal of the case from the Superior Court to the District Court. The Court of Appeals reversed, one judge dissenting, on the ground that the temporary restraining order had expired long before November 30, 1970, the date of the alleged contempt. 472 F. 2d 764 (CA9 1973). The court reasoned that under both § 527 of the California Code of Civil Procedure and Fed. Rule Civ. Proc. 65 (b), the temporary restraining order must have expired no later than June 7, 1970, 20 days after its issuance. The court rejected petitioners' contention that the life of the order was indefinitely prolonged by § 1450 "until dissolved or modified by the district court," holding that the purpose of that statute "is to prevent a break in the force of an injunction or a restraining order that could otherwise occur when jurisdiction is being shifted," 472 F. 2d, at 767, not to "create a special breed of temporary restraining orders that survive beyond the life span imposed by the state law from which they spring and beyond the life that the district court could have granted them had the orders initiated from the federal court." *Id.*, at 766.

As this understanding of the statute was in conflict with decisions of two other Circuits interpreting § 1450 to preclude the automatic termination of state court temporary restraining orders,[2] we granted certiorari. 414 U. S. 816 (1973). Finding ourselves in substantial agreement with the analysis of the Ninth Circuit in the present case, we affirm.

---

[2] See *Appalachian Volunteers, Inc.* v. *Clark*, 432 F. 2d 530 (CA6 1970), cert. denied, 401 U. S. 939 (1971); *Morning Telegraph* v. *Powers*, 450 F. 2d 97 (CA2 1971), cert. denied, 405 U. S. 954 (1972). See also *The Herald Co.* v. *Hopkins*, 325 F. Supp. 1232 (NDNY 1971); *Peabody Coal Co.* v. *Barnes*, 308 F. Supp. 902 (ED Mo. 1969).

## I

On May 15, 1970, petitioners Granny Goose Foods, Inc., and Sunshine Biscuits, Inc., filed a complaint in the Superior Court of California for the county of Alameda alleging that respondent, a local Teamsters Union, and its officers and agents, were engaging in strike activity in breach of national and local collective-bargaining agreements recently negotiated by multiunion-multiemployer bargaining teams. Although the exact nature of the underlying labor dispute is unclear, its basic contours are as follows: The Union was unwilling to comply with certain changes introduced in the new contracts; it believed it was not legally bound by the new agreements because it had not been a part of the multiunion bargaining units that negotiated the contracts;[3] and it

---

[3] This dispute was also the subject of a proceeding before the National Labor Relations Board. See *Airco Industrial Gases,* 195 N. L. R. B. 676 (1972). From the findings of fact in that proceeding, it appears that since 1964 it has been the practice in the trucking industry for representatives of a group of the various Teamsters locals and a group of various trucking employers to negotiate national agreements and supplemental agreements covering local areas. Agreements covering the 1967–1970 period had expired on March 31, 1970. Negotiations between the negotiating committees of the multiunion and multiemployer groups toward a contract for the 1970–1973 period began in January 1970 and continued in February and April. On April 29, the Teamsters negotiating committee approved the national and various supplemental agreements and on April 30, two representatives from each of the Teamsters locals in the multiunion group approved the agreements. Some time thereafter a nationwide referendum vote of all Teamsters members was conducted and it was determined that the employees had ratified the agreements.

The Union claimed it was not bound by the new agreements because it had made a timely withdrawal from the multiunion-multiemployer bargaining unit in a letter of January 28, 1970, to various employers, informing them of the Union's intention to negotiate a separate agreement from the national and supplemental

wanted to negotiate separate contracts with petitioner employers.

The same day the complaint was filed, the Superior Court issued a temporary restraining order enjoining all existing strike activity and ordering the defendants to show cause on May 26, 1970, why a preliminary injunction should not issue during the pendency of the suit. An amended complaint adding petitioner Standard Brands, Inc., was filed on May 18, and a modified temporary restraining order was issued that same day adding a prohibition against strike activities directed toward that employer.

On May 19, 1970, after having been served with the May 15 restraining order but before the scheduled hearing on the order to show cause, the Union and the individual defendants removed the proceeding to the District Court on the ground that the action arose under § 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U. S. C. § 185.[4] On May 20, 1970, an amended removal petition was filed to take into account the modified temporary restraining order of May 18.

Simultaneously with the filing of the removal petition, the defendants filed a motion in the District Court to dissolve the temporary restraining order. The sole ground alleged in support of the motion was that the District Court lacked jurisdiction to maintain the restraining order under this Court's decision in *Sinclair Refining Co.* v. *Atkinson,* 370 U. S. 195 (1962), where

agreement. The Board ultimately determined that the Union's withdrawal was not timely because negotiations had begun on January 7, 1970, prior to the attempted withdrawal. We, of course, express no view on this issue.

[4] In *Avco Corp.* v. *Aero Lodge No. 735,* 390 U. S. 557 (1968), we held that § 301 (a) suits initially brought in state courts may be removed to the designated federal forum under the federal-question removal jurisdiction delineated in 28 U. S. C. § 1441.

the Court held that notwithstanding § 301's grant of jurisdiction to federal courts over suits between employers and unions for breach of collective-bargaining agreements, § 4 of the Norris-La Guardia Act, 47 Stat. 70, 29 U. S. C. § 104, barred federal courts from issuing an injunction against a strike allegedly in violation of a collective-bargaining agreement containing a no-strike clause.

The employers then filed a motion to remand the case to the Superior Court, alleging that the defendants had waived their right to removal by submitting to the jurisdiction of the state court. The Union's motion to dissolve and the employers' motion to remand came on for a hearing on May 27, 1970. The motion to remand was denied from the bench. With respect to the motion to dissolve, the employers brought to the attention of the District Court our grant of certiorari in *Boys Markets* v. *Retail Clerks Union,* 396 U. S. 1000 (1970), which was interpreted as an indication that the Court would re-examine its holding in *Sinclair.* As *Boys Markets* had been argued here in April 1970, the District Court refrained from taking any action on the motion to dissolve until it received further guidance from this Court. On June 1, 1970, we handed down our decision in *Boys Markets* v. *Retail Clerks Union,* 398 U. S. 235, overruling *Sinclair* and holding that a district court could enjoin a strike in breach of a no-strike clause in a collective-bargaining agreement and order arbitration under the agreement. Three days later, on June 4, 1970, the District Court entered a brief order denying the motion to dissolve the state court temporary restraining order, citing *Boys Markets.*

Evidently picketing and strike activity stopped and the labor dispute remained dormant after June 4. The flame was rekindled, however, when on November 9,

1970, the Union sent the employers telegrams requesting bargaining to arrive at a collective-bargaining agreement and expressing the Union's continued belief that it was not bound by the national and local agreements negotiated by the multiunion-multiemployer groups. The employers answered that there was no need to bargain because, in their view, the Union was bound by the national and local agreements. The conflict remained unresolved, and on November 30, 1970, the Union commenced its strike activity once again.

The next day the employers moved the District Court to hold the Union, its agents, and officers in contempt of the modified temporary restraining order issued by the Superior Court on May 18. A hearing was held on the motion the following day. The Union's argument that the temporary restraining order had long since expired was rejected by the District Court on two grounds. First, the court concluded that its earlier action denying the motion to dissolve the temporary restraining order gave the order continuing force and effect. Second, the court found that § 1450 itself served to continue the restraining order in effect until affirmatively dissolved or modified by the court. Concluding after the hearing that the Union had willfully violated the restraining order, the District Court held it in criminal contempt and imposed a fine of $200,000.[5]

---

[5] Three-fourths of the fine was conditioned on the Union's failure to end the strike within 24 hours of the court's order, one-half on failure to end the strike within 48 hours, and one-fourth on failure to end the strike within 72 hours.

Although we do not rest our decision on this point, there seems to be much evidence in the record suggesting that even if the restraining order remained in effect and had been violated, the violation was not willful. A finding that the violation was willful obviously presupposes knowledge on the part of the Union that the order was still in effect. Whether or not the order in fact

## II

Leaving aside for the moment the question whether the order denying the motion to dissolve the temporary restraining order was effectively the grant of a preliminary injunction, it is clear that whether California law or Rule 65 (b) is controlling, the temporary restraining order issued by the Superior Court expired long before the date of the alleged contempt.  Section 527 of the California Code of Civil Procedure,[6] under which the

remained in effect on November 30, the Union evidently believed it had expired.  Prior to commencing its strike in November, the Union informed the employers through its attorney that it did "not understand from the file that there is presently in effect any order which forbids Local 70 from bargaining with the employer, or from pressing its position that it has a right to bargain for a separate contract.  A motion to dissolve a temporary restraining order against economic action was denied by the federal court, but that temporary restraining order has long since become ineffective by virtue of the statutory limitation on its duration, and there has been no application for a preliminary injunction.

"Accordingly, the federal court case is pending, but there are no outstanding orders which affect the assertion by Local 70 of rights which it claims. . . ."  App. 67.

[6] Section 527 (Supp. 1974) provides:

"An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor.  A copy of the complaint or of the affidavits, upon which the injunction was granted, must, if not previously served, be served therewith.

"No preliminary injunction shall be granted without notice to the opposite party; nor shall any temporary restraining order be granted without notice to the opposite party, unless it shall appear from facts shown by affidavit or by the verified complaint that great or irreparable injury would result to the applicant before the matter can be heard on notice.  In case a temporary restraining order shall be granted without notice, in the contingency above specified, the matter shall be made returnable on an order requiring cause to be shown why the injunction should not be granted, on the earliest day

order was issued, provides that temporary restraining orders must be returnable no later than 15 days from the date of the order, 20 days if good cause is shown, and unless the party obtaining the order then proceeds to submit its case for a preliminary injunction, the temporary restraining order must be dissolved.[7] Simi-

---

that the business of the court will admit of, but not later than 15 days or, if good cause appears to the court, 20 days from the date of such order. When the matter first comes up for hearing the party who obtained the temporary restraining order must be ready to proceed and must have served upon the opposite party at least two days prior to such hearing, a copy of the complaint and of all affidavits to be used in such application and a copy of his points and authorities in support of such application; if he be not ready, or if he shall fail to serve a copy of his complaint, affidavits and points and authorities, as herein required, the court shall dissolve the temporary restraining order. The defendant, however, shall be entitled, as of course, to one continuance for a reasonable period, if he desire it, to enable him to meet the application for the preliminary injunction. The defendant may, in response to such order to show cause, present affidavits relating to the granting of the preliminary injunction, and if such affidavits are served on the applicant at least two days prior to the hearing, the applicant shall not be entitled to any continuance on account thereof. On the day upon which such order is made returnable, such hearing shall take precedence of all other matters on the calendar of said day, except older matters of the same character, and matters to which special precedence may be given by law. When the cause is at issue it shall be set for trial at the earliest possible date and shall take precedence of all other cases, except older matters of the same character, and matters to which special precedence may be given by law."

[7] The time limitation of § 527 has been strictly construed by the California courts. See, e. g., *Smith* v. *Superior Court*, 64 Cal. App. 722, 222 P. 857 (1923); *Sharpe* v. *Brotzman*, 145 Cal. App. 2d 354, 302 P. 2d 668 (1956); *Oksner* v. *Superior Court*, 229 Cal. App. 2d 672, 40 Cal. Rptr. 621 (1964); *Agricultural Prorate Comm'n* v. *Superior Court*, 30 Cal. App. 2d 154, 85 P. 2d 898 (1938).

Petitioners argue that the time limitation of § 527 is not applicable here because it is operative only with respect to orders

larly, under Rule 65 (b),[8] temporary restraining orders must expire by their own terms within 10 days after entry, 20 days if good cause is shown.

granted without notice to the adverse party. In the present case, petitioners indicate, telephonic notice was given to the Union's counsel on May 15, the day the employers first sought the restraining order, counsel was served with all documents prior to a hearing arranged that day, and counsel was present in the courtroom and presented argument on behalf of the Union at that hearing.

We think it clear from § 527, however, that this kind of informal notice and hearing does not convert the temporary restraining order into a preliminary injunction of unlimited duration under state law. Section 527 provides that when a case comes up for a hearing on a preliminary injunction, the party seeking the injunction "must have served upon the opposite party *at least two days prior to such hearing,* a copy of the complaint and of all affidavits to be used in such application and a copy of his points and authorities in support of such application . . . ." (Emphasis added.) In providing that no preliminary injunction shall be granted without notice to the opposite party, we think the statute thus contemplates notice of at least two days, with a meaningful opportunity to prepare for the hearing, rather than the kind of informal, same-day notice that was given in this case.

This interpretation of state law is supported on the facts of this case. Even though the Superior Court held some sort of hearing, with Union counsel attending, before granting the temporary restraining order, the court obviously felt that the hearing was not a sufficient basis for ruling on the preliminary injunction. Accordingly, in the same order granting the temporary restraining order, the court set the case for a hearing on the application for a preliminary injunction within the 15-day limit imposed by § 527.

In any event, we need not rest our holding on this interpretation of state law, for even if this restraining order could have had unlimited duration under California law, it was subject to the time limitations of Rule 65 (b) after the case was removed to federal court. See *infra,* at 437–440. Although by its terms Rule 65 (b), like § 527, only limits the duration of restraining orders issued without notice, we think it applicable to the order in this case even though informal notice was given. The 1966 Amendments to Rule 65 (b),

Petitioners argue, however, that notwithstanding the
time limitations of state law, § 1450 keeps all state court
injunctions, including *ex parte* temporary restraining

requiring the party seeking a temporary restraining order to certify
to the court in writing the efforts, if any, which have been made to
give either written or oral notice to the adverse party or his
attorney, were adopted in recognition of the fact that informal
notice and a hastily arranged hearing are to be preferred to no
notice or hearing at all. See Advisory Committee's Note, 28 U. S. C.
App. 7831. But this informal, same-day notice, desirable though
it may be before a restraining order is issued, is no substitute for
the more thorough notice requirements which must be satisfied to
obtain a preliminary injunction of potentially unlimited duration.
The notice required by Rule 65 (a) before a preliminary injunction
can issue implies a hearing in which the defendant is given a fair
opportunity to oppose the application and to prepare for such op-
position. *Sims* v. *Greene,* 161 F. 2d 87 (CA3 1947). The same-day
notice provided in this case before the temporary restraining
order was issued does not suffice. See *Bailey* v. *Transportation-
Communication Employees Union,* 45 F. R. D. 444 (ND Miss. 1968).
See also C. Wright & A. Miller, Federal Practice & Procedure: Civil
§ 2949, p. 468 (1973 ed.), reading into Rule 65 (a) a five-day-notice
requirement based on Fed. Rule Civ. Proc. 6 (d).

[8] Rule 65 (b) provides:

"(b) Temporary Restraining Order; Notice; Hearing; Duration.

"A temporary restraining order may be granted without written or
oral notice to the adverse party or his attorney only if (1) it clearly
appears from specific facts shown by affidavit or by the verified
complaint that immediate and irreparable injury, loss, or damage
will result to the applicant before the adverse party or his attor-
ney can be heard in opposition, and (2) the applicant's attorney
certifies to the court in writing the efforts, if any, which have been
made to give the notice and the reasons supporting his claim that
notice should not be required. Every temporary restraining order
granted without notice shall be indorsed with the date and hour
of issuance; shall be filed forthwith in the clerk's office and
entered of record; shall define the injury and state why it is ir-
reparable and why the order was granted without notice; and
shall expire by its terms within such time after entry, not to exceed
10 days, as the court fixes, unless within the time so fixed the order,

orders, in full force and effect after removal until affirm-atively dissolved or modified by the district court. To the extent this reading of § 1450 is inconsistent with the time limitations of Rule 65 (b), petitioners contend the statute must control.

In our view, however, § 1450 can and should be inter-preted in a manner which fully serves its underlying pur-poses, yet at the same time places it in harmony with the important congressional policies reflected in the time limitations in Rule 65 (b).

At the outset, we can find no basis for petitioners' argument that § 1450 was intended to turn *ex parte* state court temporary restraining orders of limited dura-tion into federal court injunctions of unlimited duration. Section 1450 was simply designed to deal with the unique problem of a shift in jurisdiction in the middle of a case which arises whenever cases are removed from state to federal court. In this respect two basic pur-poses are served. Judicial economy is promoted by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed

---

for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes prece-dence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may pre-scribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require."

in state court, for example, need not be duplicated in federal court.[9]   In addition, the statute ensures that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal. Thus attachments, sequestrations, bonds, undertakings, securities, injunctions, and other orders obtained in state court all remain effective after the case is removed to federal court.

But while Congress clearly intended to preserve the effectiveness of state court orders after removal, there is no basis for believing that § 1450 was designed to give injunctions or other orders *greater* effect after removal to federal court than they would have had if the case had remained in state court.   After removal, the federal court "takes the case up where the State court left it off."   *Duncan* v. *Gegan,* 101 U. S. 810, 812 (1880).   The "full force and effect" provided state court orders after removal of the case to federal court was not intended to be more than the force and effect the orders would have had in state court.[10]

---

[9] See, *e. g., Madron* v. *Thomas,* 38 F. R. D. 177 (ED Tenn. 1965); *Murphy* v. *E. I. du Pont de Nemours & Co.,* 26 F. Supp. 999 (WD Pa. 1939); *Borton* v. *Connecticut Gen. Life Ins. Co.,* 25 F. Supp. 579 (Neb. 1938).   Of course, repleading may be required by the district court in appropriate cases.   See, *e. g., Foust* v. *Baltimore & O. R. Co.,* 91 F. Supp. 817 (SD Ohio 1950); *Shell Petroleum Corp.* v. *Stueve,* 25 F. Supp. 879 (Minn. 1938).

[10] We note that § 1450 expressly provides that attachments or sequestrations effected by the state court prior to removal "shall hold the goods or estate to answer the final judgment or decree in the same manner as they would have been held to answer final judgment or decree had it been rendered by the State court."   Petitioners argue that since post-removal treatment of an attachment effected in the state court was expressly made dependent on the provisions of state law, while no such express provision was made with respect to injunctions issued by the state court prior to removal,

More importantly, once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal. Section 1450 implies as much by recognizing the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal. This Court resolved this issue long ago in *Ex parte Fisk,* 113 U. S. 713 (1885). There it was argued that an order to take the deposition of a witness issued by the state court prior to removal was binding in federal court and could not be reconsidered by the federal court, notwithstanding its inconsistency with certain federal statutes governing procedure in federal courts. The Court rejected this contention, and said that the predecessor of § 1450

> "declares orders of the State court, in a case afterwards removed, to be in force until dissolved or modified by the Circuit Court. This fully recognizes the power of the latter court over such orders. And it was not intended to enact that an order made

Congress must have intended that injunction orders not be controlled after removal by the durational limitations of state law.

As we view the matter, the express provision in § 1450 that state law governs attachments after removal is simply an additional statement of long-settled federal law providing that in all cases in federal court, whether or not removed from state court, state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered. See Fed. Rule Civ. Proc. 64. Section 1450 makes it clear that this settled rule of federal law applies to removed cases as well. If anything, therefore, it supports our conclusion that the other procedural requirements of federal law, including the time limitations of Rule 65 (b), must be applied to state court temporary restraining orders after the case has been removed to federal court. See *infra,* at 437–440.

in the State court, which affected or might affect the mode of trial yet to be had, could change or modify the express directions of an act of Congress on that subject.

. . . . .

"The petitioner having removed his case into the Circuit Court has a right to have its further progress governed by the law of the latter court, and not by that of the court from which it was removed; and if one of the advantages of this removal was an escape from this examination, he has a right to that benefit if his case was rightfully removed." *Id.*, at 725–726.

See also *King* v. *Worthington,* 104 U. S. 44 (1881); *Freeman* v. *Bee Machine Co.,* 319 U. S. 448 (1943).

By the same token, respondent Union had a right to the protections of the time limitation in Rule 65 (b) once the case was removed to the District Court. The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal. See Fed. Rule Civ. Proc. 81 (c).[11] In addition, we may note that although the durational limitations imposed on *ex parte* restraining orders are now codified in a federal rule, they had their origin in § 17 of the Clayton Act of 1914, 38 Stat. 737. As the House Report recommending its enactment emphasized, the durational and other limitations imposed on temporary restraining orders were thought necessary to cure a serious problem of "ill-considered injunctions without notice."[12] The stringent restrictions imposed by § 17,

---

[11] See generally Wright & Miller, *supra,* n. 7, § 1024, at 108–110, and cases there cited.

[12] See H. R. Rep. No. 627, 63d Cong., 2d Sess., 25 (1914).

and now by Rule 65,[13] on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, cf. *Carroll* v. *President and Comm'rs of Princess Anne,* 393 U. S. 175, 180 (1968), but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.[14]

We can find no indication that Congress intended § 1450 as an exception to its broader, longstanding policy of restricting the duration of *ex parte* restraining orders. The underlying purpose of § 1450—ensuring that no lapse in a state court temporary restraining order will occur simply by removing the case to federal court—and the policies reflected in Rule 65 (b) can easily be accommodated by applying the following rule: An *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force

---

[13] Section 17 of the Clayton Act was codified as 28 U. S. C. § 381 (1940 ed.), and was repealed by the Judicial Code Revision Act of 1948, 62 Stat. 997, for the stated reason that it was covered by Rule 65. See H. R. Rep. No. 308, 80th Cong., 1st Sess., A236 (1947).

[14] See, *e. g., Pan American World Airways* v. *Flight Engineers' Assn.,* 306 F. 2d 840 (CA2 1962); *Smotherman* v. *United States,* 186 F. 2d 676 (CA10 1950); *Sims* v. *Greene,* 161 F. 2d 87 (CA3 1947). This basic purpose is implicit in Rule 65 (b)'s requirement that after a temporary restraining order is granted without notice, "the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character . . . ."

longer than the time limitations imposed by Rule 65 (b), measured from the date of removal.[15]

Applying our holding to the present case is simple. The temporary restraining order was issued by the Superior Court on May 18, 1970, and would have remained in effect in the state court no longer than 15 days, or until June 2. The case was removed to federal court on May 20, 1970. The temporary restraining order therefore expired on May 30, 1970, applying the 10-day limitation of Rule 65 (b) from the date of removal. Accordingly, no order was in effect on November 30, 1970, and the Union violated no order when it resumed its strike at that time.

## III

We now turn to petitioners' argument that, apart from the operation of § 1450, the District Court's denial of the Union's motion to dissolve the temporary restraining order effectively converted the order into a preliminary injunction of unlimited duration. The Court of Appeals rejected this argument out of hand, stating that "[t]he Union's unsuccessful effort to dissolve the order before it died a natural death did not convert the temporary restraining order into a preliminary injunction or estop it from relying on the death certificate." 472 F. 2d, at 767. We reach essentially the same conclusion.

---

[15] The following two illustrations should suffice to clarify this holding. Where the state court issues a temporary restraining order of 15 days' duration on Day 1 and the case is removed to federal court on Day 13, the order will expire on Day 15 in federal court just as it would have expired on Day 15 in state court. Where, however, a state court issues a temporary restraining order of 15 days' duration on Day 1 and the case is removed to the federal court on Day 2, the restraining order will expire on Day 12, applying the 10-day time limitation of Rule 65 (b) measured from the date of removal. Of course, in either case, the district court could extend the restraining order for up to an additional 10 days, for good cause shown, under Rule 65 (b).

As indicated earlier, once a case has been removed to federal court, its course is to be governed by federal law, including the Federal Rules of Civil Procedure. Rule 65 (b) establishes a procedure whereby the party against whom a temporary restraining order has issued can move to dissolve or modify the injunction, upon short notice to the party who obtained the order. Situations may arise where the parties, at the time of the hearing on the motion to dissolve the restraining order, find themselves in a position to present their evidence and legal arguments for or against a preliminary injunction. In such circumstances, of course, the court can proceed with the hearing as if it were a hearing on an application for a preliminary injunction. At such hearing, as in any other hearing in which a preliminary injunction is sought, the party seeking the injunction would bear the burden of demonstrating the various factors justifying preliminary injunctive relief, such as the likelihood of irreparable injury to it if an injunction is denied and its likelihood of success on the merits.[16]

On the other hand, situations might arise where the parties are not prepared and do not intend at the hearing on the motion to dissolve or modify the temporary restraining order to present their cases for or against a preliminary injunction. In such circumstances, the appropriate procedure would be for the district court to deal with the issues raised in the motion to dissolve or modify the restraining order, but to postpone for a later hearing, still within the time limitations of Rule 65 (b), the application for a preliminary injunction. See generally C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2954, p. 523 (1973 ed.).

---

[16] See, *e. g., Robert W. Stark, Jr., Inc.* v. *New York Stock Exchange,* 466 F. 2d 743 (CA2 1972); *Crowther* v. *Seaborg,* 415 F. 2d 437 (CA10 1969); *Garlock, Inc.* v. *United Seal, Inc.,* 404 F. 2d 256 (CA6 1968).

In the present case we think it plain that the hearing on the Union's motion to dissolve the restraining order cannot be considered to be a hearing on a preliminary injunction, and that the District Court's order denying the motion to dissolve cannot reasonably be construed as the grant of a preliminary injunction. There is no indication in the record that either party or the District Court itself treated the May 27 hearing as a hearing on an application for a preliminary injunction. The employers made no attempt at that time to present their case for a preliminary injunction. Likewise, the Union made no attempt at that time to present its defense that it was not bound by the new national and local agreements because it had made a timely with-drawal from the multiunion bargaining unit negotiating said contracts. See n. 3, *supra.* The court itself did not indicate that it was undertaking a hearing on a pre-liminary injunction. As far as we can tell, it never addressed itself at the hearing to the various equitable factors involved in considering a preliminary injunction, but only considered the employers' argument that the case should be remanded to the state court because the right to remove had been waived by the Union's appear-ing in the state proceeding and the Union's argument that the temporary restraining order should be dissolved for want of jurisdiction under the *Sinclair* holding.

We cannot accept petitioners' argument that the con-trolling factor is that the Union had the *opportunity* to be heard on the merits of the preliminary injunction when it moved in the District Court to dissolve the temporary restraining order. Rule 65 (b) does not place upon the party against whom a temporary restraining order has issued the burden of coming forward and pre-senting its case against a preliminary injunction. To the contrary, the Rule provides that "[i]n case a tempo-

rary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time . . . and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order." The burden was on the employers to show that they were entitled to a preliminary injunction, not on the Union to show that they were not.

Even were we to assume that the District Court had intended by its June 4 order to grant a preliminary injunction, its intention was not manifested in an appropriate form. Where a hearing on a preliminary injunction has been held after issuance of a temporary restraining order, and where the District Court decides to grant the preliminary injunction, the appropriate procedure is not simply to continue in effect the temporary restraining order, but rather to issue a preliminary injunction, accompanied by the necessary findings of fact and conclusions of law.[17] As stated by the Second Circuit:

> "The fact that notice is given and a hearing held cannot serve to extend indefinitely beyond the period limited by [Rule 65 (b)] the time during which a temporary restraining order remains effective. The [Rule] contemplates that notice and hearing shall result in an appropriate adjudication,

---

[17] Fed. Rule Civ. Proc. 52 (a) provides that "in granting or refusing interlocutory injunctions the court shall . . . set forth the findings of fact and conclusions of law which constitute the grounds of its action." Where a temporary restraining order has been continued beyond the time limits permitted under Rule 65 (b), and where the required findings of fact and conclusions of law have not been set forth, the order is invalid. See, e. g., *National Mediation Bd.* v. *Air Line Pilots Assn.*, 116 U. S. App. D. C. 300, 323 F. 2d 305 (1963); *Sims* v. *Greene*, 160 F. 2d 512 (CA3 1947).

i. e., the issuance or denial of a preliminary injunction, not in extension of the temporary stay." *Pan American World Airways* v. *Flight Engineers' Assn.,* 306 F. 2d 840, 842 (1962) (footnotes omitted).

See also *Sims* v. *Greene,* 160 F. 2d 512 (CA3 1947).

As the fine imposed in this case exemplifies, serious penalties can befall those who are found to be in contempt of court injunctions. Accordingly, one basic principle built into Rule 65 is that those against whom an injunction is · issued should receive fair and precisely drawn notice of what the injunction actually prohibits.[18]

"The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. . . . The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension." *International Longshoremen's Assn.* v. *Philadelphia Marine Trade Assn.,* 389 U. S. 64, 76 (1967).

It would be inconsistent with this basic principle to countenance procedures whereby parties against whom an injunction is directed are left to guess about its intended duration. Rule 65 (b) provides that temporary restraining orders expire by their own terms within 10 days of their issuance. Where a court intends to supplant such an order with a prelimi-

---

[18] Rule 65 (d) provides:

"Every order granting an injunction and every restraining order . . . shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ."

nary injunction of unlimited duration pending a final decision on the merits or further order of the court, it should issue an order clearly saying so. And where it has not done so, a party against whom a temporary restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rule 65 (b). Here, since the only orders entered were a temporary restraining order of limited duration and an order denying a motion to dissolve the temporary order, the Union had no reason to believe that a preliminary injunction of unlimited duration had been issued.

Since neither § 1450 nor the District Court's denial of the Union's motion to dissolve the temporary restraining order effectively converted that order into a preliminary injunction, no order was in effect on November 30, 1970, over six months after the temporary restraining order was issued.[19] There being no order to violate, the District Court erred in holding the Union in contempt, and the judgment of the Court of Appeals reversing the District Court's adjudication of contempt must be

*Affirmed.*

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE, MR. JUSTICE STEWART, and MR. JUSTICE POWELL join, concurring in the judgment.

I agree with the Court that the judgment of the Court of Appeals for the Ninth Circuit in this case should be affirmed, since there was no injunctive order in effect at the time that respondent's allegedly contemptuous conduct occurred. But I do not join that portion of the Court's opinion which lays down a "rule" for all cases

---

[19] In view of our disposition of the case, we need not and do not reach respondent's argument that notwithstanding *Boys Markets* v. *Retail Clerks Union*, 398 U. S. 235 (1970), the temporary restraining order issued in this case should be governed by the 5-day limit of § 7 of the Norris-La Guardia Act, 29 U. S. C. § 107.

involving 28 U. S. C. § 1450,[1] the statute which all parties agree is controlling in the case before us. In my view, the announcement of this "rule" is neither necessary to the decision of this case nor consistent with the provisions of the statute itself.

The Court persuasively demonstrates in its opinion that the temporary restraining order issued by the California Superior Court had expired by its own terms long before the alleged contempt occurred. And I see nothing in the language or legislative history of 28 U. S. C. § 1450, providing that "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court," which would indefinitely extend the Superior Court's restraining order beyond the time of its normal expiration under state law. Since the temporary restraining order, had the case remained in state court, concededly would have expired in early June, respondent's actions in November and December could not have constituted a contempt of that order.

The Court also persuasively demonstrates that none of the proceedings occurring after removal of the case to the United States District Court had the effect of converting the subsisting state court temporary restraining order into a preliminary injunction of indefinite duration. Those proceedings addressed markedly different issues and certainly did not give the state court order a new, independent federal existence.

Having said this much, the Court has disposed of the case before it. The opinion then goes on, however, to devise a "rule" that

"[a]n *ex parte* temporary restraining order issued by

---

[1] The relevant provision of 28 U. S. C. § 1450 reads:

"All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65 (b), measured from the date of removal." *Ante,* at 439–440. (Footnote omitted.)

But the determination that mere removal of a case to a federal district court does not extend the duration of a previously issued state court order past its original termination date makes quite unnecessary to this case any further discussion about time limitations contained in Fed. Rule Civ. Proc. 65 (b). More importantly, the second clause of the "rule" devised by the Court seems quite contrary to the specific language of 28 U. S. C. § 1450.

The Court apparently bases this latter clause of the "rule" upon the observation that "respondent Union had a right to the protections of the time limitation in Rule 65 (b) once the case was removed to the District Court." While this premise probably has a good deal to recommend it as a matter of practicality or of common sense, the language of the statute gives no hint that rules of practice governing issuance of federal injunctions in the first instance were automatically to be incorporated in applying its terms. The statute says that the state court's temporary restraining order "shall remain in full force and effect until dissolved or modified by the district court." This Court's "rule," however, says that it shall *not* remain in full force and effect, even though not dissolved or modified by the District Court, if it would have a life beyond the time limitations imposed by Rule 65 (b).

I think it likely that the interest in limiting the duration of temporary restraining orders which is exemplified in Rule 65 (b) can be fully protected in cases removed

to the district court by an application to modify or dissolve a state court restraining order which is incompatible with those terms.[2] Such a procedure would be quite consistent with § 1450, which specifically contemplates dissolution or modification by the district court upon an appropriate showing, in a way that the "rule" devised by the Court in this case is not. It is unlikely that many orders issued under rules of state procedure, primarily designed, after all, to provide suitable procedures for state courts rather than to frustrate federal procedural rules in removed actions, would by their terms remain in effect for a period of time far longer than that contemplated by the comparable Federal Rule of Civil Procedure. But in the rare case where such a condition obtains, it is surely not asking too much of a litigant in a removed case to comply with § 1450 and affirmatively move for appropriate modification of the state order.

Therefore, although I cannot subscribe to the rule which the Court fashions to govern cases of this type, I concur in its conclusion that respondent's activity in November and December 1970 did not violate any injunctive order which was in force at that time.[3]

---

[2] Indeed, respondent's motion to dissolve the state court order because of the prohibitions contained in the Norris-LaGuardia Act, 29 U. S. C. § 104, was just such a motion. That motion was denied by the District Court, however, and respondent made no further effort to obtain a modification or dissolution of the state restraining order prior to its expiration.

[3] I see no occasion for the Court's rather casual speculation, contained in n. 5 of its opinion, that the respondent's violation of the order, even were it effective at the time of its later conduct, may not have been "willful." The Court has concluded that the order was *not effective* at that later time, and it can serve no useful purpose to speculate about the sufficiency of the evidence with respect to violation of a defunct order.