In the Matter of Arbitration of Certain Differences Between ULTRACASH-MERE HOUSE, LTD., Petitioner,

and

MADISON'S OF COLUMBUS, INC., Respondent.

No. 81 Civ. 3119(CES).

United States District Court, S. D. New York.

March 15, 1982.

Hiram G. Shields, New York City, for petitioner.

Shereff, Friedman, Hoffman & Goodman, New York City, Schottenstein, Zox & Dunn, Columbus, Ohio, for respondent.

## MEMORANDUM DECISION

STEWART, District Judge:

Ultracashmere contracted in New York to supply clothing to Madison's of Ohio, F.O.B. New York. After delivery, the parties became embroiled in a dispute and pursuant to the terms of the contracts, Ultracashmere served Madison's with a demand for arbitration. Madison's thereafter commenced an action in Ohio state court, alleging breach of contract and fraudulent misrepresentation.[1] Ultracashmere then began an action in New York Supreme Court seeking to compel arbitration. The New York court, in an *ex parte* proceeding, stayed the Ohio action. Madison's removed the pend-

ing New York case to this court and moved to dissolve the stay. One day subsequent to the return date of the motion, however, the Ohio court issued a default judgment against Ultracashmere upon another motion by Madison's. We later denied Madison's motion to dissolve the stay and continued the stay by Memorandum Decision dated June 15, 1981. Madison's now contends that, according to Fed.R.Civ.P. 65(b), the New York stay had expired prior to issuance of the Ohio judgment, that the Ohio judgment is valid, and that *res judicata* mandates dismissal of Ultracashmere's petition to compel arbitration.

Before considering this argument, it is necessary to determine whether Ohio's assertion of jurisdiction over Ultracashmere was invalid, as Ultracashmere contends.[2] If so, the default judgment has no effect. Ultracashmere relies upon *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), for authority that the constitutionally required minimum contacts between the forum state, the controversy, and the defendant are lacking. Both those cases support the proposition that the unilateral activity of the plaintiff cannot of itself bring the defendant within the forum state's jurisdiction.[3] In this case, however, Ultracashmere's contacts with Ohio result not merely from Madison's activities but from Ultracashmere's own pur-

---

1. Although Madison's disputes the adequacy of Ultracashmere's demand for arbitration, terming the March 27, 1981 demand a threat to seek arbitration, it is clear that Madison's received such a demand prior to commencing suit in Ohio. Shield's Aff. August 24, 1981, Ex. B. We express no opinion whether such a demand was adequate to initiate arbitration, as it was not filed with the American Arbitration Association until about April 21, 1981.

2. The Ohio court obtained jurisdiction under the Ohio long-arm statute which provides personal jurisdiction in actions arising from "contracting to supply revenues or goods in this state". Ohio Rev.Code Ann. § 2307.382 (Page) (1981). Ultracashmere contends that this application of the statute violates due process.

3. In *World-Wide Volkswagen v. Woodson*, the plaintiff brought a products liability action in Oklahoma against a German automobile manu-

facturer and a New York distributor. 444 U.S. at 288–89, 100 S.Ct. at 562–563. The Supreme Court held that since the defendants' only contact with Oklahoma was the plaintiff's independent action of driving the automobile into that state, due process would not permit Oklahoma to exercise jurisdiction over the defendants. *Id.* at 299, 100 S.Ct. at 568. In *Hanson v. Denckla*, the Supreme Court held that Florida could not exercise jurisdiction over a Delaware trustee where the trustee's contacts with that state were basically limited to mailing checks to the beneficiary after she moved to Florida. 357 U.S. at 250–51, 78 S.Ct. at 1237–1238. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state". *Id.* at 253, 78 S.Ct. at 1239.

poseful efforts to circulate its goods within Ohio.[4] Therefore, we find Ohio's exercise of jurisdiction within the limits of due process.

▆▆▆ As Ultracashmere was subject to personal jurisdiction in Ohio, it follows that if the New York stay had expired as of the issuance of the Ohio judgment, Ultracashmere's petition to compel arbitration is foreclosed by *res judicata*.[5] Madison's gauges the duration of the stay by Fed.R. Civ.P. 65(b). Rule 65(b) establishes that a federal temporary restraining order, issued pursuant to an *ex parte* proceeding, expires within ten days of issuance (or twenty days

with a showing of good cause) unless the party enjoined agrees to an extension.[6] Where a state court issues such an order in an action subsequently removed to the federal courts, the duration of the temporary restraining order is limited to the shorter of either the period defined by state law, as measured from the date of issuance, or the period established by Rule 65(b), as measured from the date of removal. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439–40, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974).[7]

The New York stay originally issued on May 13, 1981, in conjunction with an order

---

**4.** *Compare McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (upholding jurisdiction where "suit was based on a contract which had substantial connection with that state"), *with World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980) (minimum contacts lacking where supplier does not even "indirectly, through others, serve or seek to serve the Oklahoma market").

**5.** Determinations of a state court of competent jurisdiction preclude relitigation in federal court of any issues raised, *Thistlethwaite v. City of New York*, 362 F.Supp. 88, 91 (S.D.N.Y. 1973), *aff'd*, 497 F.2d 339 (2d Cir.), *cert. denied*, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974), or any issues which, through the exercise of due diligence, should have been raised. *Woods v. Cannaday*, 158 F.2d 184, 185 (D.C. Cir.1946). This is true whether or not the prior judgment was obtained in default. *Riehle v. Margolies*, 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929).

**6.** Rule 65(b) provides in part that any temporary restraining order issued without "written or oral notice to the adverse party . . . shall expire by its own terms within such time after entry, not to exceed 10 days . . . unless . . . for good cause shown, [it] is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period".

**7.** Ultracashmere makes two arguments against the applicability of Rule 65(b) to this case. First, it contends that the stay should endure pursuant to 9 U.S.C. § 3 which provides for an indefinite stay of judicial proceedings where the party raises the requirement of an arbitration clause "in the court in which such suit is pending". This section is inapplicable because the arbitration was raised in the Southern District of New York, not in Ohio where the suit

was pending. We note that although § 3 provides for an indefinite stay, it is consistent with Rule 65(b), for as long as the stay is granted in the court in which the suit is pending, the dangers of an *ex parte* proceeding are not presented. Second, Ultracashmere contends that the stay is not subject to the constraints of Rule 65(b) because New York could have extended its life indefinitely. On this point, however, the Supreme Court was unequivocal. "The *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, *but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal.*" *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 423 U.S. at 439–40, 94 S.Ct. at 1124 (emphasis added).

We hold that Rule 65(b) is applicable to the stay issued by the New York Supreme Court on May 13, 1981, and is therefore subject to the constraints imposed by *Granny Goose*. Rule 65(b) reflects a precept central to our judicial system: litigation is a contest between two parties, each being given the opportunity to present facts and arguments favorable to its side. "The stringent restrictions imposed by . . . Rule 65 . . . reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard . . . ." *Id.* at 438–39, 94 S.Ct. at 1123–1124. Although exigencies may permit a court to enjoin the actions of a party without first having provided an opportunity to be heard, the potentially unfair and damaging effects of such measures necessitate the strict limitations reflected in Rule 65(b). Here, Madison's was initially enjoined from proceeding with this action in Ohio without any opportunity to contest the issuance of the injunction. This is precisely the type of proceeding to which Rule 65(b) is directed.

to show cause returnable on May 18. Madison's did not appear or contest the stay on May 18. The case was removed from New York State Court on May 22, 1981. Four days later, Madison's moved to dissolve the stay to permit the Ohio litigation to proceed and sought a stay of this action. Madison's motion to dissolve the stay was returnable on June 11, 1981. The Ohio judgment was issued June 12, 1981, twenty-one days after removal. Our written decision continuing the stay was issued on June 15.

 We hold that the stay did not expire prior to the issuance of the Ohio judgment for two reasons. First, the stay ceased to be an *ex parte* matter on May 18, 1981, when Madison's failed to appear or contest the stay in response to an order to show cause. Madison's was subject to personal jurisdiction in New York by virtue of the consent to jurisdiction clause in its contracts with Ultracashmere. Each contract in issue expressly provides that:

> Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration to be held in the City and County of New York, State of New York ... [and] [t]he parties hereto consent to the jurisdiction and venue of the Supreme Court of the State of New York, County of New York.

In fact, the forum selection clause alone would constitute consent to personal jurisdiction. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977). Madison's thus had the opportunity and the obligation to appear and present its case against the stay on the merits on May 18, 1981. The stay issued on May 18 was a litigated motion on notice and not an *ex parte* order. As Rule 65(b) by its terms and its analytic underpinnings applies only to *ex parte* orders, we find it inapplicable to this case after May 18, 1981. The stay issued by the state court was not limited in duration by Rule 65, and was effective at the time the Ohio judgment was entered.

Second, assuming that Rule 65(b) applied on these facts after May 18, Madison's waived the time limits of the rule. The *ex parte* stay issued on May 13 and continued on May 18 was unquestionably valid at the time Madison's moved this court to dissolve the stay. By making the adjudicatory mechanism of this court during the effectiveness of the stay, Madison's demonstrated that it not only had notice of the stay, but also desired to contest the matter on the merits. In the terminology of Rule 65(b), Madison's motion evinces an implied consent to extend the stay until the merits of dissolving the stay are determined. This implied consent did not terminate upon the return date of the motion to dissolve the stay, but was effective until our decision of June 15. Accordingly, the June 12 default judgment was issued during the pendency of the stay and is not *res judicata*.

Madison's motion for partial summary judgment is denied. Madison's is directed to take appropriate action to vacate the default judgment entered in Ohio.

SO ORDERED.