**GIL PHARMACEUTICAL CORP., Plaintiff,**

v.

**ADVANCED GENERIC CORPORATION, et al., Defendants.**

**Civil No. 10–1074 (FAB).**

United States District Court, D. Puerto Rico.

March 10, 2010.

---

Ramon E. Dapena, Usera Morell Bauza Dapena & Cartagena LLP, San Juan, PR, for Plaintiff.

Veronica Ferraiuoli–Hornedo, Nigaglioni & Ferraiuoli, San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is plaintiff's application for a temporary restraining order ("TRO") and preliminary injunctive relief (Docket No. 24). The Court referred plaintiff's application for preliminary injunctive relief to a magistrate judge (Docket Nos. 15, 16, and 19), and, for the following reasons, **DENIES** the plaintiff's application for a TRO. The denial notwithstanding, the plaintiffs may seek an injunctive remedy at the preliminary injunction hearing scheduled by the magistrate judge to begin on April 6, 2010, and for which both parties have notice and the opportunity to be heard on the record in advance of and at that hearing. (Docket No. 29.)

## PROCEDURAL HISTORY

The plaintiff, Gil Pharmaceutical Corporation ("Gil" or "plaintiff"), first filed this case in the Court of First Instance of the Commonwealth of Puerto Rico, Caguas Superior Division, on December 15, 2009. (Docket No. 21–5 at 1.) Gil alleged, *inter alia*, that defendants Advanced Generic Corporation and others ("Generic" or "defendants") violated Puerto Rico's Trademark Law, P.R. Laws Ann. Tit. 10, §§ 171–171y (2006)[1] ("Puerto Rico Trademark Act"), by selling pharmaceutical products under marks or labels confusingly similar to the markings registered by trademark to Gil. Pursuant to the Puerto Rico Trademark Act, Gil requested *ex parte* injunctive relief. The Puerto Rico Trademark Act provides, in pertinent part:

When the registered owner of the mark pursuant to §§ 171–171y of this title files a complaint sworn or supported on a sworn statement before the court, alleging that the defendant is violating his property rights on said registered mark, through forgery, copy, imitation or adoption of a mark that is so similar to that of the registered owner that it creates the probability of confusion, the court shall issue an ex parte temporary order directed to the defendant party requiring him/her to immediately paralyze, cease or desist, under admonition of contempt of court the use of the mark to which the suit refers, until his right is judicially discussed.

. . .

The provisional order shall provide for the holding of a hearing within ten (10) days, counting from the date on which the provisional order is issued, for the

---

1. Gil invokes in particular 10 L.P.R.A. 171w and 171x of that Act. (Docket No. 21–2 at 5.)

defendant party to show cause for which said provisional order or attachment order should not be rendered ineffective, and a preliminary injunction order be issued until the rights of the parties are discussed.

P.R. Laws Ann. Tit. 10, §§ 171–171y.[2]

On January 26, 2010, Caguas Superior Court Judge Julio A. Diaz–Valdes granted a hearing for the following day, January 27, 2010, to address issues related to Gil's request for provisional injunctive relief pursuant to the Puerto Rico Trademark Act. (Docket No. 7–4 at 7.) Judge Valdes advised Generic "that if it does not appear at the scheduled conference, the Court shall consider its nonappearance as of [sic] acceptance, of the facts alleged in the complaint as well as other remedy requested, for which the order for Injunction requested may be issued," and notified Gil of its responsibility to serve the January 26, 2010, order on defendants, together with the complaint and the summons, no later than that same day at 5:00 p.m. *Id.*

At the January 27, 2010, hearing, Gil informed Judge Valdes that it was unable to serve the defendants through Generic's resident agent.[3] (Docket No. 21–5 at 1.) With only the plaintiff present, Judge Valdes held the hearing. Judge Valdes heard testimony from Gil's marketing manager, upon whose sworn statement Gil's complaint was based, and reviewed

documentation showing Gil's ownership of the trademarks it claims Generic infringed as well as the actual physical products of both Gil and Generic as support for Gil's infringement claims. Based on the evidence presented at the hearing and pursuant to the statutory provisions of the Puerto Rico Trademark Act, Judge Valdes issued an *ex parte* temporary restraining order requiring Generic (and all named defendants) "to immediately stop, cease and desist of using in their products the name or trademark of 'Biogil' and 'Biotect Plus'." *Id.* at 2. Judge Valdes also scheduled a hearing for February 4, 2010, for defendants to show cause as to why the provisional injunctive relief order should be vacated and why a preliminary injunction should not issue. *Id.* at 2–3. Judge Valdes ordered Gil to serve the defendants together with a sworn complaint and the summons no later than Monday, February 1, 2010, at 5:00 p.m. *Id.* at 3. According to Generic, Gil did not serve the defendants as ordered, but did notify drug wholesalers about the temporary restraining order along with a letter explaining the wholesalers' obligation to comply with the order. (Docket No. 7 at 3.)[4]

On February 2, 2010, Generic filed a notice of removal to the United States District Court for the District of Puerto Rico. (Docket No. 1.) On February 26, 2010, Generic filed an emergency motion to

---

**2.** The Court relies on the most recently translated version of the codified statute. As both parties have noted, a recently amended version of the statute has been enacted. Because that version has not yet been translated or codified, the Court may not rely upon it (*see Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58 (1st Cir.2008)). It does not change the meaning of the statute, however, as it pertains to this opinion. In fact, the new version of the statute, according to both parties' unofficial translations, merely reiterates the limited temporal nature of a TRO issued pursuant to the Puerto Rico Trademark Act to

which this Court refers in greater depth in its discussion below.

**3.** Service on the individual defendants may not be accomplished through a corporation's resident agent. Therefore, Gil made no efforts to serve the individual defendants in spite of Judge Valdes' clear order to do so.

**4.** Judge Valdes' order only prohibits the defendants from using their products using the names "Biogil" and "Biotech Plus." There is nothing in Judge Valdes' order requiring Gil to notify drug wholesellers of the TRO. Gil took it upon itself to do so.

set aside or dissolve the *ex parte* temporary restraining order issued by the Caguas Superior Court. (Docket No. 7.) That same day, this Court issued an order requiring Gil to show cause, no later than March 1, 2010 at 9.00 a.m., as to why the TRO should not be dissolved or set aside. This Court also set an evidentiary hearing on the issue for March 1, 2010 at 11:00 a.m. Gil failed to show cause by March 1, 2010 at 9:00 a.m. and appeared at the March 1, 2010 hearing only after the Court itself contacted the attorneys for Gil; they arrived belatedly to the hearing.[5]

At the March 1, 2010, hearing this Court ordered: (1) the dissolution of the January 27, 2010 TRO pursuant to Federal Rule of Civil Procedure 65; (2) Gil to send letters, within the following twenty-four hours, to each of Generic's clients informing them of the TRO's dissolution and that they may again sell the contested products until further notice, to inform the Court of compliance with this order, and to attach a copy of all letters sent pursuant to the order; (3) the referral of the case to a magistrate judge for a preliminary injunction hearing at the earliest possible date; and (4) the dismissal of the cause of action against the individual defendants without prejudice.[6] (Docket Nos. 14, 15 and 16.)

On March 4, 2010, having received no notification of Gil's compliance with its March 1, 2010, order, the Court ordered Gil to file, no later than March 8, 2010 at 9:00 a.m., "an informative motion attaching copies of all letters sent to defendant's clients advising them that the TRO has been dissolved and that they may continue to sell defendants products until further order of the Court." (Docket No. 20.)

The Court instructed Gil that "[f]ailure to inform the Court as indicated may *result* in severe sanctions on defendant [sic] or its counsel." *Id.* .

On March 5, 2010, Gil filed a motion for another temporary restraining order and for a preliminary injunction. (Docket No. 24.) Gil also filed a motion in compliance with the Court's March 2, 2010, order. (Docket No. 25.)

## DISCUSSION

There are two primary questions the Court wishes to pose and address as the backdrop of its discussion: First, the question of what happens to a TRO when a case is removed from state to federal court; and second, the question of what happens when a plaintiff who disregards Court orders and fails to stay abreast of electronic filings or appear for hearings in the case he is responsible for prosecuting, asks the Court at the eleventh hour to reinstate an injunctive status about which he stayed silent when affirmative action was necessary. The answers to these background questions, which the Court addresses in turn, lead inexorably to this Court denial of Gil's motion for another temporary restraining order.

## I. Temporal Limitations on *Ex Parte* TROs

■ Although Judge Valdes set forth no explicit temporal limitation for the *ex parte* TRO against the defendants, the Puerto Rico Trademark Act establishes that "[t]he provisional order shall provide for the holding of a hearing within ten (10) days, counting from the date on which the provi-

---

**5.** The Court also notes that no counsel of record appeared for Gil until the Court ordered the Clerk of the Court to enter counsel Dapena's name on the docket and reprimanded counsel for not complying with the ongoing obligation to stay abreast of filings on the electronic filing system after being duly served. (See Docket No. 14.)

**6.** Gil filed a motion for reconsideration (Docket No. 28) of Court's dismissal of the individual defendants, which the Court is currently reviewing.

sional order is issued, for the defendant party to show cause for which said provisional order or attachment order should not be rendered ineffective, and a preliminary injunction order be issued until the rights of the parties are discussed." [7] P.R. Laws Ann. Tit. 10, §§ 171–171y. The statute's text itself makes clear that a temporary restraining order is exactly that—temporary—and that it is not meant to last indefinitely; rather, it is intended to keep the status quo intact until both parties can be heard and present information to the deciding court for a more informed and more permanent solution. Judge Valdes, in keeping with this implied statutory limitation, scheduled a hearing for February 4, 2010, seven days after the TRO's enactment on January 27, 2010. The only reason the hearing did not occur is because the case was removed to federal court on February 2, 2010.

■ Regardless of what may have occurred at a hearing before the Commonwealth court, once this case was removed to the Federal Court, federal law, not Commonwealth law, governed the proceedings, including management of the orders and rulings made prior to removal. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters, Local 70,* 415 U.S. 423, 437, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837, 842 (1st Cir.1988). According to 28 U.S.C. § 1450, whenever a case is removed to federal court "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Thus, even had the TRO issued by Judge Valdes remained active at the time this Court acted—more than thirty days from the TRO's enactment (a highly dubious assumption)—that order "would still have had no binding effect" on this Court's discretion. *See Granny Goose Foods,* 415 U.S. at 437, 94 S.Ct. 1113.

■ "The Supreme Court has made clear" that "when a case is removed to federal district court, that court *must* dissolve an ex parte state court injunction or temporary restraining order—once the maximum time limits that Federal Rule of Civil Procedure 65(b) authorizes for an ex parte order have expired." *Biomedical Instrument and Equip. Corp. v. Cordis Corp.,* 797 F.2d 16, 18 (1st Cir.1986) (citing, *inter alia, Granny Goose Foods,* 415 U.S. at 439–40, 94 S.Ct. 1113). According to Rule 65(b), an *ex parte* TRO expires "at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed.R.Civ.P. 65(b)(2). Further, "the reasons for an extension must be entered in the record." *Id.* The court must hear and decide an adverse party's motion to dissolve the *ex parte* TRO when that party gives two days notice to the party who obtained the order. *Id.*

## II. Affirmative Duties of Parties Seeking Injunctive Relief

■ A court granting *ex parte* temporary injunctive relief is generally required by Rule 65(b) to hold a hearing on a preliminary injunction, a more permanent form of injunctive relief available to protect a party from irreparable injury, at the earliest possible time to protect the adverse party from prejudice or injury resulting from the injunction. *See* 11A

---

7. As stated above, *see* note 2, *supra,* a recent amendment to the statute reinforces this time limit. Both parties' unofficial translations of the newly passed version contain two distinct references to the TRO's limited applicability until the holding of a hearing within ten days from the date of the TRO's issuance.

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2953 (2d ed. 1995). Likewise, the party requesting injunctive relief also has certain duties it must abide: "The party who obtained the restraining order must proceed with the application for a preliminary injunction when the motion therefor comes on for a hearing; if the party does not, the court must dissolve the order." *Id.* at § 2952. As stated above, a TRO without a definitive end date automatically expires unless extended upon a showing of *good cause.* Fed.R.Civ.P. 65(b).

■ During the approximately thirty days between the enactment of Gil's TRO against Generic and this Court's dissolution of that TRO pursuant to Rule 65(b), Gil failed even to ensure that its counsel's contact information appeared on the electronic docket, much less take any affirmative steps to make a showing of good cause for the TRO's extension or to apply for a preliminary injunction. But not only did Gil fail to demonstrate proactively to this Court a need to continue the TRO or to issue a preliminary injunction, its reactive stances and silences with regard to injunctive relief show this Court that no urgent or compelling need requires the extreme remedy provided by a TRO against defendants. To recount, Gil failed to serve the defendants as ordered by Judge Valdes; it did nothing to follow up on its TRO for over one month; it disregarded this Court's order to show cause as to why the TRO should not be dissolved; it failed to appear to a hearing on Generic's motion to dissolve the TRO until prompted to do so by this Court; and it only complied with the Court's order that Gil send notice of the TRO's dissolution to Generic's clients late upon the Court's threat of sanctions for noncompliance.

■ While "[a] district court unquestionably has the authority to dismiss a case

with prejudice for want of prosecution," to prevent unnecessary delays, docket congestion, and possible harassment of the opposing party, such drastic sanctions should be used sparingly, especially as they may punish a plaintiff for his attorney's failures. *Santiago v. Rivera,* 553 F.2d 710, 712 (1st Cir.1977). The Court does not refer to its recognized authority to dismiss a case for want of prosecution in order to invoke it. Instead, the Court refers to the broader implications and rationales for such authority as the basis for its denial of Gil's decision to revive its temporary injunctive relief after a month-long lapse. Just as a plaintiff's conduct—tardiness, neglect, or disregard for rules and orders—may be interpreted by a court as a tacit, if not passively aggressive, decision to give up prosecution in that case, so might the plaintiff's conduct here be interpreted to constitute its deficit desire for urgent, immediate injunctive relief. Indeed, the First Circuit Court of Appeals noted its "general view that, where an injunction is sought [to obtain reinstatement in public employment] 'it behooves the plaintiff to act promptly'." *Santiago v. Rivera,* 553 F.2d 710, 712 (1st Cir.1977) (citing *Graffals Gonzalez v. Garcia Santiago,* 550 F.2d 687 (1st Cir.1977)). The First Circuit Court of Appeals thus concluded that "[w]hen a claim for injunctive relief deserves and is granted priority treatment, a reasonable inference from the delay of the moving party is that he has little interest in vindicating whatever rights he may have." *Id.* at 712–13.

Because Gil failed to show any interest in sustaining its own injunctive relief, or in complying with this Court's orders to pay attention to and explain its grounds for being provided such relief, the Court cannot help but conclude that no irreparable injury exists requiring another TRO. "In accord with the discretionary character of the injunctive remedy and the venerable

maxim that 'equity aids the vigilant, not those who slumber on their rights'," Charles Alan Wright, et al., *Federal Practice and Procedure* § 2946 (2d ed. 1995), the Court hereby **DENIES** Gil's motion for a temporary restraining order. Gil will, nevertheless, have another bite at the injunctive relief apple: on April 6, 2010, the magistrate judge has scheduled a preliminary injunction hearing, during which time perhaps Gil will act more aggressively in protecting its interests than it has shown thus far.

**IT IS SO ORDERED.**