**CITY OF CHANUTE, City of Iola, and City of Fredonia, Plaintiffs-Appellees,**

v.

**KANSAS GAS AND ELECTRIC COMPANY, Defendant-Appellant.**

No. 83–1818.

United States Court of Appeals,
Tenth Circuit.

Feb. 5, 1985.

---

J. Michael Peters, Wichita, Kan. (Ralph Foster, Wichita, Kan., with him on the briefs), for defendant-appellant.

Charles F. Wheatley, Jr. of Wheatley & Wollesen, Washington, D.C. (Peter A. Goldsmith of Wheatley & Wollesen, Washington, D.C., and Charles H. Apt III of Glaves, Weil & Evans, Wichita, Kan., with him on the brief), for plaintiffs-appellees.

Brian J. Moline, Gen. Counsel for Kansas Corp. Com'n, Topeka, Kan., on the brief for amicus curiae State Corp. Com'n of the State of Kansas.

Before HOLLOWAY, Chief Judge, and SETH and McKAY, Circuit Judges.

McKAY, Circuit Judge.

The issue raised in this appeal is whether the trial court properly issued a preliminary injunction ordering the defendant to "wheel" (transmit) electric power for the plaintiffs.

Plaintiffs are three municipalities that own and operate their own electric power operation and distribution systems. In addition to the power they themselves generate, plaintiffs also purchase wholesale electric power from defendant, a public utility, under a contract limiting rate changes in a manner favorable to the cities. Several

years ago, each plaintiff city contracted with additional suppliers of electricity as well. The cities of Chanute and Iola were to begin receiving five-year allocations of hydro-electric power from the Southwestern Power Administration (SWPA) on January 1, 1984, and January 1, 1985 respectively. Under the terms of the contracts, if the cities did not begin using their allotments of power on these dates, the allotments would be lost. The city of Fredonia was to begin receiving power from the Nearman Creek generating plant on June 1, 1983, and was obligated to pay demand charges whether or not it actually used the power.

None of the cities has the capacity to transmit the power from the generation facilities of these new suppliers to their respective distribution systems. Because each of the cities was already connected to defendant's transmission lines, they approached defendant to arrange for the wheeling[1] of the power. Defendant was willing to enter into an agreement with the cities to wheel power, however, only on the condition that the existing contracts for the purchase of wholesale power be terminated. Because the cities were unwilling to do so, defendants refused to wheel power for them.

Consequently, plaintiffs filed this action alleging, inter alia, violations of sections 1 and 2 of the Sherman Act and of section 3 of the Clayton Act. Plaintiffs' complaint sought treble damages and a permanent injunction requiring defendant to provide them wheeling services. Plaintiffs also sought a preliminary injunction requiring defendant to wheel their power pending the outcome of this suit. The trial court granted plaintiffs' motion for the preliminary injunction four days before Fredonia was to begin receiving power from the Nearman Creek Project.

"It is well settled that the grant or denial of a preliminary injunction is within the sound discretion of the trial court, and may be set aside only if it is based on an error of law or constitutes an abuse of discre-

tion." *Kenai Oil and Gas, Inc. v. Department of Interior*, 671 F.2d 383, 385 (10th Cir.1982) (citing *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980)).

To obtain a preliminary injunction, a movant must establish that the injunction would not be adverse to the public interest; that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; that the movant will suffer irreparable injury unless the injunction issues; and that there is a substantial likelihood that the movant will eventually prevail on the merits. *Lundgrin*, 619 F.2d at 63.

All three plaintiffs established that the preliminary injunction would not be adverse to the public interest. Indeed, defendant misconstrues the test as being whether the injunction would *benefit* the public interest, and fails to elucidate any adverse effect except that suffered by the defendant.

Each plaintiff established that the injury it would sustain if the injunction is not issued outweighs whatever damage might be caused defendant by the issuance of the injunction. Indeed, defendant does not argue that the trial court erred in its balancing of the hardships.

Defendant makes several arguments in support of its position that plaintiffs did not make an adequate showing that they will suffer irreparable injury unless the injunction issues. Defendant first asserts that plaintiffs have an adequate remedy at law under the Public Utility Regulatory Policies Act of 1978. 92 Stat. 3117 *et seq.* (1978). In particular, they argue that 16 U.S.C. 824j and 824k authorize the Federal Energy Regulatory Commission to order wheeling in certain circumstances. The trial court rejected this argument, noting that the drafters of the Act "intend[ed] to preserve the jurisdiction of the Federal and State courts in actions under antitrust laws, whether or not the parties to such actions could have sought

---

1. "Wheeling is the transfer, by direct transmission or displacement, of electric power from one utility to another over the facilities of an intermediate utility." Brief of Appellant at 5.

remedies under this legislation." 564 F.Supp. 1416 at 1423 (quoting H.R.Conf. Rep. No. 95–1750, 95th Cong., 2d Sess., 68 *reprinted in* 1978 U.S.Code Cong. & Admin.News 7659, 7802). The legislative history quoted by the trial court does not specifically address whether the act does in fact provide a remedy at law for the alleged anticompetitive behavior in this case. The Federal Energy Regulatory Commission has held, however, that its authority to order wheeling was not intended to be a tool to control anticompetitive conduct. *See Southeastern Power Administration v. Kentucky Utility Co.,* Federal Energy Regulatory Commission Opinion No. 198, slip op. at 17 (Issued Nov. 8, 1983), *rehearing denied,* Opinion No. 198–A (Issued Feb. 3, 1984). Moreover, the Commission specifically concluded that wheeling would generally not be ordered when the wheeling utility would lose sales to its wholesale customers, as would be the case here. *Id.* slip op. at 13–16. Thus, we cannot say that the trial court erred in holding that PURPA does not provide plaintiffs with an adequate remedy at law.

■ Second, defendant contends that Chanute and Iola cannot claim irreparable injury until they have arranged for wheeling with the Empire District Electric Co. to interconnect with the wheeling that would be provided by defendant, because defendant is not directly connected to the SWPA. Plaintiffs are not required to produce the agreement with Empire. Their showing that they will likely reach an agreement was sufficient.

■ Third, defendant alleges that whatever injury might be suffered by the plaintiffs can be compensated by damages and therefore is not irreparable. Defendant does not dispute that Chanute and Iola would lose their allotment of power without wheeling, however. The difference in energy cost incurred by Chanute and Iola with and without SWPA power may be ascertainable, at least for the immediate future. The value of the availability of a potential supplier, however, cannot always be measured in dollars, particularly when, as here, such availability changes the competitive structure of the market and the supplier may be necessary to meet the long-term electrical demands of the cities. Thus, the trial court did not err in finding that the damage that Chanute and Iola would suffer absent the injunction would be irreparable.

■ Fredonia is in a different position, however. Its right to power from the Nearman Creek Project was not contingent on the issuance of the injunction. Absent the injunction, it would merely be forced to pay for power it would not receive.[2] This injury can be measured and compensated in dollars. The trial court recognized this fact but nonetheless granted the injunction as to Fredonia:

> While Fredonia's damages are more readily ascertainable, its factual and legal position is so intertwined with Chanute and Iola that a proper presentation of this case to a jury requires similar treatment at this stage of the proceeding. Furthermore, as to all of the cities, and under the particular circumstances of this case, the court is concerned that minimum interim damages be sustained since such injury will ultimately be born by the consuming public.

564 F.Supp. at 1424. The trial court provides no authority for its approach to this issue. The cases Fredonia proposes as precedent, Appellees' Brief at 33–34, are not on point. Fredonia's injunction must stand or fall on its own merits; it cannot rely upon injury to the public at large. *See Holly Sugar v. Goshen County Co-op Beet Growers,* 725 F.2d 564, 570 (10th Cir.1984). Furthermore, we fail to see what significant impact the denial of an injunction to Fredonia along with the grant of injunctions to Chanute and Iola would have on the presentation of this case to a jury.

---

**2.** In its brief Fredonia asserts that it would be forced into a distress sale of its right to power in the Nearman Creek Project if injunctive relief were not granted. This was not argued below nor is there support for it in the record. We, therefore, decline to consider this argument.

Consequently, we find that the trial court's finding that Fredonia would suffer irreparable injury is clearly erroneous, and its decision granting Fredonia a preliminary injunction must be reversed.

■ Finally, we must determine whether Chanute and Iola, having met the other three requirements for preliminary injunctions, established a substantial likelihood that they will eventually prevail on the merits. The Tenth Circuit has adopted a modified interpretation of the "likelihood of success" requirement: "When the other three requirements for a preliminary injunction are satisfied, 'it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.'" *Otero Savings and Loan Association v. Federal Reserve Bank*, 665 F.2d 275, 278 (10th Cir. 1981) (quoting *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir.1964)). Defendant concedes in its brief that this is the proper standard in this case, but argues that the trial court required only a showing of "complex issues." In so doing, defendant misreads the trial court's ruling. After quoting *Continental Oil*, the trial court concluded that:

> [w]here, as here, certain relatively complex issues await final resolution upon a trial on the merits, the court believes the *modified test* is the appropriate standard to apply. Cities have made a showing on the merits sufficient to convince the court that their claims involve *substantial questions which are fair ground for litigation and more deliberate investigation*.

564 F.Supp. at 1420 (emphasis added). We find that the district court applied the proper standard for likelihood of success on the merits to plaintiffs Chanute and Iola. Further, our review of the record below convinces us that Chanute and Iola have raised questions sufficiently serious, substantial, difficult and doubtful to support the district court's discretionary grant of injunctions to them.

The trial court's decision is affirmed as to plaintiffs Chanute and Iola, and reversed as to plaintiff Fredonia.