Candace CARRABUS, Christopher Barry and all others similarly situated, Plaintiffs,

v.

Alan SCHNEIDER, Personnel Officer of the County of Suffolk and the County of Suffolk, Defendants.

No. 00–CV–2885 ILG.

United States District Court, E.D. New York.

July 28, 2000.

Timothy B. Glynn, Glynn and Mercep, Stony Brook, NY, A. Craig Purcell, Rubin & Purcell, LLP, Hauppage, NY, for Candace Carrabus.

Timothy B. Glynn, Glynn and Mercep, Stony Brook, NY, for Christopher Barry, Kenneth Barry, Douglas Bessemir, Peter Beihoff, Anthony Bocchimuzzo, Jr., Ronald Brockmann, Ray Brogan, Robert Carlock, Cindy Cashman, Frank Corso, Barbara Dancome, John Delvecchio, Michael DeStefano, Michael Diresta, Thomas Evans, David Driscoll, John Flynn, Robert Fulton, Steven Gordon, Mark Hawthorne, William Hayden, Christopher Hembury, Kevin Holtje, Kenneth Jurgenson, John Kamor, James R. Kelly, George Keupp, Jason Korte, Daniel Kral, Steve Kueck, Christopher Lambert, Kevin Linkletter, Scott Lloyd, Vincent Marcoccia, William Meed, Timothy McAllister, Christopher Mohl, John Moisa, Craig Molyneux, Francis Morgan, James Moran, Colleen Murphy, Jose Nunez, William Nass, Colleen Ommundsen, Richard Oliver, Joseph Procopio, Rosemary Rigby, Juan Regueiro, Albert

Rodd, Patrick Sheridan, John Rogowski, John A. Rung, Glenn Scott, David Sterne, Michael Stopanio, Christopher Tucker, Wayne Sailor, Robert Smith, Todd Sullivan, Philip Trocchio, Michael Vella, Joel Vetter, Joseph Walker, Keith Wehr, Joseph Yip.

Theodore D. Sklar, robert J. Cimino, Suffolk county Atty., Hauppage, NY, Robert H. Cabble, Hauppauge, NY, for Alan Schneider, Suffolk County.

John M. Gadzichowski, Sharyn A. Tejani, U.S. Dept. of Justice, Civil Rights Div., Washington, DC, for U.S.

## MEMORANDUM & ORDER

GLASSER, District Judge.

Having been removed from Suffolk County Supreme Court in May of this year, this action is before the Court on the plaintiffs' motion to remand, and on the defendants' motion to vacate a temporary restraining order entered in Supreme Court enjoining Suffolk County from hiring police officers. Because this action has been properly removed, the plaintiffs' motion to remand is denied. As to defendants' motion to vacate the state court restraining order, there is no need for a ruling because the issue is moot. As explained more fully below, the order expired shortly after being removed, and there have been no further proceedings regarding the plaintiffs' initial application for injunctive relief.

## BACKGROUND

In 1983, the United States filed a civil action against Suffolk County (the "County"), the Suffolk County Police Department (the "SCPD"), its Police Commissioner, and the County's Civil Service Commission alleging, *inter alia*, that the County had engaged in employment discrimination against women, blacks and hispanics with respect to job opportunities in the County's Police Department, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* After some three years of litigation, the parties agreed to the terms of a Consent Decree entered by this Court in September, 1986. *See United States v. Suffolk County,* No. 83–CV–2737 (E.D.N.Y. Sept. 12, 1986) (Nickerson, J.).

By its terms, the Decree is designed to ensure that "women, blacks and hispanics are considered for employment by Suffolk County in the SCPD on an equal basis with white males, and that all employment decisions with respect to the SCPD shall be made on a non-discriminatory basis without regard to an applicant's or an employee's race, sex or national origin." Decree ¶ 1. Of direct relevance to the proceedings in this case, the County pledged that it would "immediately undertake to design, develop and validate a new procedure to be used by it in the selection of candidates for Police Officer in the SCPD, which procedure is lawful under Title VII and conforms to the requirements of [various provisions of the Code of Federal Regulations]." *Id.* at ¶ 3. The County further agreed to retain a testing firm, Richardson, Bellows, Henry and Co. ("RBH"), to develop such a procedure for the future selection of police officers. *Id.* at ¶ 4.

The Decree states that RBH was being retained for the purpose of creating a selection regime that would have a "less adverse impact" than the previous regime on the hiring of women, blacks, and hispanics. *Id.* at ¶ 7. The previous regime had been based in large part on a test formulated by the Educational Testing Service, Inc. ("ETS"), which had, the parties agreed, "a substantial adverse impact upon black, hispanic and female, as compared to white and male, Police Officer candidates." *Id.* at ¶ 11.

The Decree commits the County to implementing a "vigorous recruitment program directed at enhancing the employment opportunities of qualified female, black and hispanic applicants for the rank of Police Officer in the SCPD." *Id.* at ¶ 16. The Decree also recognizes the right of the

United States Department of Justice to "monitor the County's applicant flow pursuant to the County's obligation [to enhance the employment opportunities of minorities and women]. . . ." *Id.* at ¶ 18.

The Decree further binds the County to make available upon request to the Department of Justice "all documents, records or other memoranda pertaining to the recruitment, selection, hire, assignment, transfer, promotion, demotion, discipline and termination of all personnel in the SCPD," and otherwise to "furnish reports and information" concerning the County's compliance with the Decree *Id.* at ¶ 33. Finally, under the Decree this Court retained jurisdiction "for the purpose of entering all orders, judgments and decrees which may be necessary to implement that relief provided herein and to effectuate Suffolk County's full and complete compliance with Title VII." *Id.* at ¶ 37. The same provision permitted the County to move, after five years of the Decree's being entered, for its dissolution, and stated that the County would be entitled to that relief if it had "complied with this Decree in all material respects." *Id.*

In fact, the County has not moved to dissolve the Decree, which remains in force. In accord with its provisions, the County continues to submit its recruitment procedures to the Justice Department for approval, and continues to consult with DOJ on the construction of civil service examinations designed to screen potential officers for the SCPD. On May 22, 1999, such an exam was administered (the "SHL Exam"). It had originally been developed by a County contractor, SHL Landy, Jacobs, and was duly approved by the Department of Justice. Subsequently, candidates who had taken the SHL Exam were rated and ranked, and placed on an "eligibles list" on the basis of which hiring decisions would be made.

On May 17, 2000 the plaintiffs commenced a CPLR Article 78 proceeding in state court seeking judicial review of the SHL Exam.[1] On the same day they presented an order to show cause to Justice Robert A. Lifson of the Supreme Court, County of Suffolk, seeking a preliminary injunction against the County barring it from hiring police officers and from using the results of the SHL Exam pending disposition of the Article 78 proceeding. The order to show cause also contained a temporary restraining order pending the hearing on the preliminary injunction. Justice Lifson granted the TRO on plaintiffs' application in so far as it sought to enjoin the hiring of officers, and set a hearing on the application for a preliminary injunction for May 22, 2000.[2] On that day, the County filed a notice of removal with the Suffolk County Clerk, removing the case to this Court.

In their Article 78 action, the plaintiffs seek a judicial determination that the SHL Exam "was prepared, administered and graded in accord with all applicable laws, statutes and regulations" and "that the grading and weighting of answers to the selection device achieved a relevant level of true validity as a predictive device for job performance as a Suffolk County Police Officer." Petition at ¶ C. Plaintiffs also seek to enjoin "the creation of an eligible list, the processing of applicants into the police academy or any action taken to fill positions on the Suffolk County Police Department prior to petitioners and their experts having an opportunity to examine the test's validation studies . . . technical reports [and] final report . . . ." *Id.*

---

1. The United States, by John M. Gadzichowski of the Department of Justice, has since intervened as an intervenor/respondent in the action. Mr. Gadzichowski, it is worth noting, represented the United States in the Title VII enforcement proceedings against Suffolk County, and signed the Decree on behalf of the United States. Decree at ¶ 30.

2. Although in their papers the defendants characterized the plaintiffs' application as *"ex parte,"* they did concede at oral argument that an attorney from Suffolk County was present at the initial hearing before Justice Lifson (albeit on only three hours notice), and that the plaintiffs made a substantive presentation of the merits of the case at that hearing.

In support of its application for this relief, the Petition alleges that the plaintiffs' raw scores on the SHL Exam were "manipulat[ed]" and "weight[ed]" and otherwise adjusted to their detriment. Pet. at ¶ 7. The plaintiffs allege that the SHL Exam, on its face and as administered, violates both the New York Civil Service Law and the Suffolk County Code. Specifically, plaintiffs contend that by containing questions directed at gathering information about the candidate's background and personal characteristics, and by giving weight to the answers to those questions equal or in proportion to the answers to "cognitive" questions, the SHL Exam impermissibly discriminates against plaintiffs so as to generate higher "numbers of minority candidates in the top levels of the grading lists." *Id.* at ¶ 19. At the same time, plaintiffs allege, the SHL Exam also violates standards articulated in the state constitution, and reiterated in state and county law, that civil service appointments be made solely on the basis of "merit and fitness." *Id.* at ¶ 24.[3]

The plaintiffs' petition further alleges that the 1986 Decree "dealt only with the RBH selection device," and therefore is inapplicable to the SHL Exam. *Id.* at ¶ 12. Plaintiffs also allege that the defendant Alan Schneider, Personnel Director for the County government, has erroneously construed the Decree as authority for "a waiver of his obligations" under state and county law. *Id.* at ¶ 27.

### DISCUSSION

#### I. *Removal*

A state court action may be removed to federal court "if it qualifies as a 'civil action ... of which the district courts of the United States have original jurisdiction,' unless Congress expressly provides otherwise." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 474, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (quoting 28 U.S.C. § 1441(a)). The defendants invoke this Court's jurisdiction under grounds specified in the provisions of 28 U.S.C. §§ 1441(a) and (b), § 1443(2), and under the All Writs Act, 28 U.S.C. § 1651. Here, it is amply clear that the plaintiffs' state action is a "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). It follows on that basis alone that the action is a "civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), which accordingly has been properly removed, making consideration of the alternative bases for removal superfluous.[4]

■  Under long-standing Supreme Court precedents, the analysis of whether a claim "arises under" federal law is determined by the " 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet,* 522 U.S. at 475, 118 S.Ct. 921 (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). An "independent corollary" to the well-pleaded complaint rule, *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation*

---

3. The affidavit of Candace Carrabus in support of the Petition also alleges that the SHL Exam violates "the mandates of the federal law originally cited as a reason for federal intervention in Suffolk County Police hiring in 1983." Carrabus Aff. at ¶ 19.

4. Section 1443(2) provides, in pertinent part, that a state court civil action may be removed where the action arises from "[a]ny act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

The All Writs Act provides, in pertinent part, that "... all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

*Trust for Southern Cal.,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), "is the further principle that a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet,* 522 U.S. at 475, 118 S.Ct. 921 (internal quotations omitted). As the Court explains in *Rivet,*

> [i]f a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim.

*Id.* The "artful pleading" corollary follows from the basic tenets of preemption doctrine. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425.[5]

Analysis guided by these principles may begin with two observations. First, it is clear on the face of the record in this case that, contrary to plaintiffs' assertion, the 1986 Decree of this Court has not "expired," and is still very much in force. Certainly both the County and the Department of Justice have conducted themselves as if that were true, and there is nothing in the record to suggest that they were wrong to have done so. More significantly, the County has never moved for dissolution of the Decree, as it has had the right to do since September of 1991. Decree at ¶ 37.

Second, it is just as clear that the Decree does not apply exclusively to the administration of the RBH test. Indeed, the Decree provides, quite apart from its detailed prescriptions concerning the RBH test originally formulated as a less discriminatory alternative to the ETS mechanism, that

> Suffolk County hereinafter shall not utilize qualifications or selection criteria for hire, assignment, transfer or promotion within the SCPD ... which have an adverse racial, gender or ethnic impact, unless such qualifications or selection criteria have been validated in accordance with [pertinent provisions of the Code of Federal Regulations].

Decree at ¶ 9. On its face this provision applies to the SHL Exam at issue in this litigation, and presumably it was because they wanted to comply with the provision that the County consulted with the Department of Justice about the SHL Exam before using it.

---

**5.** The "defense of preemption" referred to in *Franchise Tax Bd.* and the "complete preemption" that is the focus of the "artful pleading" rule must be distinguished. Claims that are "so 'necessarily federal' that they always will permit removal to federal court, even if they are raised only by way of defense" are said to be "completely" preempted. 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3722.1 at 509–11 (1998). In such cases, federal law "not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Schmeling v. NORDAM,* 97 F.3d 1336, 1342 (10th Cir.1996). The result is that removal is proper where state claims are completely preempted, because the effect of the federal legislation is to transform those claims into federal causes of action. By contrast, "[o]rdinary preemption will not ... permit removal jurisdiction if the plaintiff chooses to frame his claim based solely on state law." 14B Wright, Miller & Cooper, Federal Practice & Procedure § 3722.1 at 508. In such a case, federal law may provide a rule of decision to the state forum, but removal jurisdiction may not be invoked on that basis alone (assuming that the rule of decision and its application in the case do not present a "substantial question of federal law"). *See Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 814–15 n. 12, 106 S.Ct. 3229, 92 L.Ed.2d 650 (distinguishing cases where removal is proper despite plaintiff's exclusive pleading of state causes of action because of the "nature of the federal issues at stake," and cases in which federal question removal would not lie, because "the violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action").

■ Plaintiffs are directly challenging the validity and lawfulness of the SHL Exam, claiming that in administering it the County is violating not just state and county mandates, but also the federal mandate of Title VII itself. It could not be any plainer that such a challenge falls squarely within this Court's jurisdiction "to effectuate Suffolk County's full and complete compliance with Title VII," as provided for under the Decree. Decree at ¶ 37. Just as clear is the federal question posed on the face of the Petition: namely whether the SHL Exam, as formulated and as administered, complies with Title VII and applicable provisions of the Code of Federal Regulations. *See Guardians Ass'n of New York City v. Civil Serv. Comm'n of New York*, 630 F.2d 79, 88–106 (2d Cir. 1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981) (setting forth and applying Title VII analysis to a selection procedure used by the NYPD); *see also Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 864–865 (2d Cir. 1988) (where the "issues raised [in an Article 78 proceeding originally filed in state court by plaintiffs] go to the very essence of the Consent Decree" removal of that proceeding pursuant to the District Court's authority under the Decree was proper) (internal quotation marks omitted).

Plaintiffs argue that their claims arise exclusively under state and county law, and that the applicability of Title VII arises only as a defense to those claims. But this is paradigm instance of the sort of argument targeted under the artful pleading doctrine. Plaintiffs purport that their claims arise from inconsistencies between the SHL Exam regime and certain provisions of state and county law. But the essence of their complaint is that the County has "manipulated test questions and answers to achieve specific results, disregarding mandatory merit and fitness requirements for police officer positions." Pet. at ¶ 9. By "specific results" the plaintiffs mean that they have been discriminated against, presumably in favor of women, blacks, and hispanics, as a consequence of the County's attempts to comply with and implement a consent decree entered pursuant to a Title VII enforcement proceeding. This last step in the reasoning is omitted from Plaintiffs' Petition, of course, because its inclusion would disclose the federal question raised on its face. But this just is artful pleading: "framing in terms of state law a complaint the real nature of [which] is federal, regardless of plaintiff's characterization, or . . . omitting to plead necessary federal questions in a complaint." *Marcus v. A.T. & T Corp.*, 138 F.3d 46, 55 (2d Cir.1998) (citation and internal quotation marks omitted).

Because the express terms of the Decree, the federal question raised by plaintiffs' challenge to a police department examination subject to Title VII of the Civil Rights Act of 1964, as amended, and the artful pleading doctrine all compel the conclusion that this action has been properly removed, the plaintiffs' motion to remand must be denied.

## II. *The State Court TRO*

■ The defendants have moved to vacate a temporary restraining order enjoining Suffolk County from hiring police officers. The order was entered in Suffolk County Supreme Court upon plaintiffs' application to Justice Robert A. Lifson on May 17, 2000, as part of an order to show cause for a preliminary injunction. The TRO apparently contained no provision specifying its date of expiration, although the rule under New York state law is that a temporary restraining order expires with the hearing on the application for a preliminary injunction, which is to be conducted "at the earliest possible time" after entry of the TRO. CPLR § 6313; *Stubbart v. Monroe County*, 58 A.D.2d 25, 29, 395 N.Y.S.2d 307, 309–10 (4th Dep't 1977), *app. denied*, 42 N.Y.2d 808, 398 N.Y.S.2d 1031, 368 N.E.2d 47 (1977) (noting that "by its very nature" a TRO expires upon issuance of a preliminary injunction); *see also*

*Honeywell, Inc. v. Technical Building Services, Inc.,* 103 A.D.2d 433, 435 n., 480 N.Y.S.2d 627, 629 n. (3d Dep't 1984) (observing that "an undertaking is discretionary where a temporary restraining order is granted . . . since such order should only last for a brief period of time") (citing Siegel, New York Practice § 330 at 403); *People v. Asiatic Petroleum Corp.,* 45 A.D.2d 835, 836, 357 N.Y.S.2d 542, 544 (1st Dep't 1974) (holding that a TRO is vacated "upon the disposition of the motion for the preliminary injunction"); *Sommerset Group, Inc. v. Town of Lewiston,* 115 Misc.2d 398, 400, 454 N.Y.S.2d 220, 222 (N.Y.Supp.1982) (declining to find defendant in contempt for violating terms of a TRO granted two and a half years earlier because such a period "is clearly not within the 'earliest possible' time requirement of CPLR § 6313(a)"). A hearing on the application for the preliminary injunction was scheduled before Justice Lifson for May 22, 2000, but that hearing never took place, because on the same day the action was removed to this Court.

■ Of course a motion to vacate a TRO may be entertained and decided only if the TRO is actually in force. Here, the defendants' assumption that the TRO enjoining Suffolk County from hiring police officers is still in force will not withstand scrutiny. In fact, under settled principles of federal law, the state court TRO expired shortly after the action was removed.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part:

Every temporary restraining order granted without notice . . . shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.

Fed.R.Civ.P. 65(b). Section 1450 of Title 28 of the United States Code provides, in part:

All injunctions, orders, and other proceedings had [in a State court action removed to federal district court] prior to its removal shall remain in full force and effect until dissolved or modified by the district court.

28 U.S.C. § 1450. In 1973, the Supreme Court of the United States construed the seeming collision course between these two provisions:

[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court issued prior to removal. Section 1450 implies as much by recognizing the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal.

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda County,* 415 U.S. 423, 437, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). Of course the TRO here was not issued *ex parte;* the County was present at the hearing before Justice Lifson. It is also true that the *Granny Goose* Court emphasizes the due process concerns awakened by *ex parte* TRO's in setting forth the reasoning in support of its holding. *See id.,* 415 U.S. at 438–39, 94 S.Ct. 1113 ("The stringent restrictions imposed by s. 17 [of the Clayton Act], and now by Rule 65 [of the Federal Rules of Civil Procedure], on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."). Nevertheless, there is no reason to believe that a state court TRO issued on notice, and in anticipation of a preliminary injunction hearing, is exempt upon removal to the federal forum from the Rule 65 time limitation that clearly does govern an *ex parte* TRO in the same circumstances. *See id.* ("An *ex parte* temporary restrain-

ing order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal."). Certainly this is the implication of footnote 15 in *Granny Goose*, offering two examples in clarification of the holding concerning the operation of state TRO's after removal:

Where the state court issues a temporary restraining order of 15 days' duration on Day 1 and the case is removed to federal court on Day 13, the order will expire on Day 15 in federal court just as it would have expired on Day 15 in state court. Where, however, a state court issues a temporary restraining order of 15 days' duration on Day 1 and the case is removed to the federal court on Day 2, the restraining order will expire on Day 12, applying the 10–day time limitation of Rule 65(b) measured from the date of removal.

*Id.* at 440, n. 15, 94 S.Ct. 1113. Professor Siegel has considered the specific issue of how *Granny Goose* affects the intersection between federal practice and New York law, and his analysis is directly applicable here:

The difference [between the New York rule that places no explicit time limit on a TRO and the federal rule that limits a TRO's duration to 10 days unless extended by the court] becomes a sensitive point in a New York state court action that has been removed to a federal court while a state-granted TRO is outstanding. Assume that at the moment of removal, the TRO may have several weeks to run under the terms imposed by the state court. *Those several weeks*

*will be cut back to the federal 10 days when the case is removed, measured from the removal itself.* The plaintiff must be ever alert to this, so as to take whatever steps are necessary to satisfy the now-applicable federal requirements and assure that the TRO does not lapse before the preliminary injunction hearing comes on.

David D. Siegel, *New York Practice* § 640 at 1105–06 (3d ed.1999) (emphasis supplied).

It follows that the state court TRO enjoining Suffolk County from hiring police officers expired no later than June 1, 2000.[6] Accordingly, the defendants' motion to vacate that TRO is moot; since no later than June 1, 2000, the defendants have not been under any legal restraint from hiring police officers.

## CONCLUSION

For the reasons stated, the plaintiffs' motion to remand is denied. The defendants' motion to vacate the state court TRO is moot, because, for reasons set forth in detail above, that TRO expired no later than June 1, 2000.

SO ORDERED.

---

**6.** As already noted, the rule under New York law is that a TRO that does not otherwise specify a time limitation remains in force until the preliminary injunction hearing. *See* David D. Siegel, New York Practice § 640 at 1105 ("If a TRO is granted, it lasts in New York practice until the preliminary injunction hearing."). Thus, arguably, under state law

the TRO in this case never expired, because a hearing was never held. If that is correct as a matter of state law, however, the federal rule articulated in *Granny Goose* applies, rendering the state TRO without force on the tenth day after removal, or in this case, June 1. *See Granny Goose,* 415 U.S. at 440 n. 15, 94 S.Ct. 1113.