# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AHWAR SULTAN,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DONALD J. TRUMP,** *et al.*, <br> *in his official capacity as* <br> *President of the United States*, <br><br> Defendants. | Civil Action No. 25-cv-1121 |

## MEMORANDUM OPINION

Plaintiff Ahwar Sultan moves for a Temporary Restraining Order against Defendants regarding the revocation of his F1 visa and termination of his Student and Exchange Visitor Information System ("SEVIS") record. Pl.'s Mot. Temp. Restraining Order at 11, ECF No. 4-1 ("Pl.'s TRO"). After considering the parties' briefing and oral argument, for the reasons below, the court will GRANT IN PART and DENY IN PART Plaintiff's Motion.

### I. BACKGROUND

#### A. Factual Background

During the 2024 presidential campaign, Defendant, then a candidate for President, repeatedly vowed to deport noncitizen students who participate in protest activity. Compl. ¶ 108, ECF No. 1 ("Compl."). On or about October 28, 2023, he told one news outlet, "All of the resident aliens who joined in the pro-jihadist protest this month, nobody's ever seen anything like it. Come 2025, we will find you and we will deport you." *Id*. He repeated similar statements on May 14, 2024, and on August 13, 2024, to reporters. *Id.* ¶¶ 109–10

On January 30, 2025, President Trump issued Executive Order ("EO") "Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats." Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025). Section 1(b) of the EO states that in order "[t]o protect Americans . . . the United States must ensure that admitted aliens and aliens otherwise already present in the United States do not *bear hostile attitudes* toward its citizens, culture, government, institutions, or founding principles, and do not advocate for, aid, or support designated foreign terrorists and other threats to our national security." Compl. ¶ 112 (internal quotation marks and citation omitted) (emphasis added). The EO requires Defendants Secretary of Homeland Security Kristi Noem, Attorney General Pam Bondi, and the Director of National Intelligence Tulsi Gabbard to do the following:

1. Section 2(a)(i): "[I]dentify all resources that may be used to ensure that all aliens . . . who are already in the United States, are vetted and screened to the maximum degree possible."

2. Section 2(a)(ii): "[A]scertain whether [an] individual seeking [an immigration] benefit is . . . not a security or public safety threat."

3. Section 2(a)(iv): "[V]et and screen to the maximum degree possible all aliens who . . . are already inside the United States."

4. Section 3: "Recommend any actions necessary to protect the American people from the actions of foreign nationals who have undermined or seek to undermine the fundamental constitutional rights of the American people[.]"[1]

Compl. ¶¶ 113 (a)–(c). On March 6, 2025, the State Department confirmed that: (1) it was planning to review internal databases to see whether any visa holders were arrested and had not been subjected to immigration enforcement; *id.* ¶ 131, and (2) it would enact the "Catch and Revoke" program, an artificial intelligence effort to "cancel the visas of foreign nationals who appear to support Hamas or other designated terror groups." *Id.* ¶ 132. On March 27, 2025,

---

[1] These recommendations were due on February 19, 2025, but have not been made public. Compl. ¶ 22.

Secretary of State Marco Rubio announced at a press conference that the State Department had revoked the visas of approximately 300 foreign students. *Id.* ¶ 8.

Plaintiff Sultan is one such student. He is enrolled as a graduate student at the Ohio State University ("OSU"), studying Comparative Studies. *Id.* ¶ 15. He also works as a Teaching Assistant for an Introduction to Humanities course. *Id.* ¶ 45. The other Plaintiff is Students for Justice in Palestine ("SJP"), a student-led organization at OSU committed to advocating for Palestinian rights, of which Sultan is an "outspoken member." *Id.* ¶¶ 16, 74.

On April 25, 2024, Sultan was arrested after he participated in a SJP protest demanding that OSU divest from Israel. *Id.* ¶¶ 4–3, 70. His charges were later dismissed and expunged after he completed 10 hours of community service. *Id.* ¶¶ 6, 70.

On April 21, 2025, at 1:37 A.M., OSU notified Sultan by email that his SEVIS record had been terminated for "otherwise failing to maintain status – individual identified in criminal records check and/or has had their VISA revoked." *Id.* ¶ 87; Pl.'s Reply, Ex. C, at 1, ECF No. 9-3 ("Ex. C"). The notice instructed Sultan to cease all F-1-related activity and campus employment immediately but provided no further information. Ex. C at 1.

On April 7, 2025, at 9:38 A.M., the U.S. Consul General in Mumbai emailed Sultan informing him that his F-1 visa had been revoked. Pl.'s Reply, Ex. B at 1–2, ECF No. 9-2 ("Ex. B"). Defense counsel confirmed the same on the record during the court's hearing on April 23, 2025. Temp. Restraining Order Hr'g Tr. at 8:23–9:3.

Plaintiffs filed suit in this court on April 15, 2025, alleging several claims under the First Amendment. Compl. ¶¶ 140–64. Only Sultan, however, brought claims under the Administrative Procedure Act ("APA"), the Fifth Amendment's Due Process Clause, and the Immigration and Nationality Act. *Id.* ¶¶ 165–90. In Sultan's motion for a temporary restraining order, however, he

relies on his APA claim and his Fifth Amendment claim for procedural and substantive due process. Pl.'s TRO at 9–10. He asks the court to:

1. Declare that Defendants' termination of his F-1 student status under the SEVIS system without affording him sufficient notice and opportunity to be heard violates the Fifth Amendment and APA;

2. Order Defendants to provide adequate individualized proceedings before an impartial adjudicator;

3. Order Defendants to reinstate his SEVIS record at OSU

   a. or provide him with a reasonable period to maintain his valid F-1 status by allowing him to transfer to another Department of Homeland Security ("DHS")-approved school if his reinstatement at OSU is not accepted;

4. Enjoin Defendants from detaining him while this matter is pending.

*Id.* at 14.

### B. Legal Background

An F-1 visa controls a noncitizen student's entry into the United Sates, not their lawful status while in the country. Congress requires a noncitizen with an F-1 visa to be a "bona fide student" and "to pursue a full course of study," 8 U.S.C. § 1101(a)(15)(F)(i), or "engag[e] in authorized practical training." 8 C.F.R. § 214.2(f)(5)(i).

The SEVIS database is maintained by Immigration and Customs Enforcement ("ICE") to manage and track noncitizens' compliance with the terms of their visa status. Compl. ¶ 33; 8 U.S.C. § 1372(a)(1); 86 Fed. Reg. 69663 (Dec. 8, 2021). A noncitizen student maintains F-1 legal status only if the "student is making normal progress toward completed a course of study." 8 C.F.R. § 214.3(f)(5)(i). Designated School Officials must report through SEVIS when a student fails to maintain status. *Id.* § 214.3(g)(2)(ii)(A). If a student's SEVIS record is terminated, there are consequences:

1. The student loses all on- and/or off-campus employment authorization.

2. The student cannot re-enter the United States on the terminated SEVIS record.

3. ICE agents may investigate to confirm the departure of the student.

4. Any associated F-2 or M-2 dependent records are terminated.

"Terminate a Student," U.S. Dep't of Homeland Security, https://perma.cc/5K2T-2JXD. In addition, when a student's SEVIS record is terminated, there is "no grace period" for "duration of status": "If the student and dependents are still in the United States, the student must either apply for reinstatement, or the student and dependents must leave the United States immediately." *Id.*

DHS can terminate a noncitizen's F-1 legal status in one of two ways: (1) student-initiated failure; (2) an agency-initiated termination. Under the first category, a noncitizen student can lose their lawful status if they engage in unauthorized employment, 8 C.F.R. § 214.1(e), provide false information to DHS, *id.* § 214.1(f), or is convicted of a "crime of violence" with a potential sentence of more than a year. *Id.* § 214.1(g). For the second category, DHS can terminate a student's F-1 status under three circumstances:

1. When a previously-granted waiver under INA § 212(d)(3) or (4) is revoked;

2. When a private bill to confer lawful permanent residence is introduced in Congress; or

3. When DHS publishes a Federal Register notification identifying national security, diplomatic, or public safety reasons for termination.

*Id.* § 214.1(d). Visa revocation is not a basis for SEVIS record termination. In fact, in a 2010 policy guidance document, DHS stated that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." Pl.'s Reply, Ex. A, Dep't. Homeland Security, Policy

Guidance 1004-04-Visa Revocations, at 3 (2010), ECF No. 9-1 ("Ex. A").[2] While visa revocation does not necessarily terminate a noncitizen's status in the United States, the reason for the revocation could lead DHS to review the student's record and determine that the individual is out of status. *Id.* at 1–3.

The Secretary of State has wide latitude to refuse entry or deport noncitizens if he has "reasonable grounds to believe" that their presence or activities "would have potentially serious adverse foreign policy consequences for the United States." *See* 8 U.S.C. § 1227(a)(4)(C)(i).

## II.     LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion." *Postal Police Off. Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 418 (D.D.C. 2020) (citation omitted). As with a preliminary injunction, a party seeking a temporary restraining order must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). The third and fourth factors merge when the government is an opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

A court also considers the "underlying purpose" of a temporary restraining order— "preserving the status quo and preventing irreparable harm" until it has an opportunity to rule on the merits. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974); *Shelley v. Am. Postal Workers Union*, 775 F. Supp.

---

[2] Defense counsel represented at the court's hearing on April 28, 2025, that he has "not received a response" "as to whether or not" the 2010 policy "has been cancelled." Temp. Restraining Order Hr'g Tr. at 17:8–10.

2d 197, 202 (D.D.C. 2011) ("The court may issue a temporary restraining order ('TRO') when a movant is faced with the possibility that irreparable injury will occur even before the hearing for a preliminary injunction required by Federal Rule of Civil Procedure 65(a) can be held."); *Elec. Data Sys. Fed. Corp. v. Gen. Servs. Admin.*, 629 F. Supp. 350, 352 (D.D.C. 1986) ("In the context of the limited purpose of a temporary restraining order, the Court's analysis of these factors seeks principally to ensure preservation of the status quo.").

## III.   ANALYSIS

### A.  Irreparable Harm

Demonstrating irreparable harm is "a threshold requirement in granting temporary injunctive relief." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009) (citing *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).  To show irreparable harm, the "injury alleged must be 'both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is a clear and present need for equitable relief.'" *Church v. Biden*, 573 F. Supp. 3d 118, 138 (D.D.C. 2021) (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (emphasis in original)).

Sultan has shown that he faces irreparable harm from Defendants' actions.  His SEVIS record has been terminated, Ex. 3 at 1, and Defendants confirmed that his F-1 visa has also been revoked.  Temp. Restraining Order Hr'g Tr. at 9:9–10.  Yet, despite being asked by the court at the temporary restraining order hearing, defense counsel stated that he did not know whether Sultan is accruing unlawful presence in the United States because he is waiting for a response from ICE.  *Id.* at 13:15–14:3.  Defense counsel also stated that he could not say whether the government intends to initiate removal proceedings.  *Id.* at 22:12–15.  As a result, Sultan is in a catch-22 situation—he cannot attend school or work because his SEVIS record is terminated; nor does he know whether he should leave the United States immediately or risk being subject to removal

proceedings, because Defendants refuse to provide him with the necessary information. Sultan must therefore wait in legal limbo, at possible risk of detention, until Defendants decide whether and how he should be removed.

To be sure, Defendants are correct that "the burden of removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 435. But Sultan's harm does not end there. He is (1) unable to work without a work authorization; (2) harmed by the allegation that he has a criminal record; and (3) is accruing unlawful presence in the United States, which places him at risk of detention and deportation and jeopardizes any opportunity he may have to return to the United States for employment, education, or personal travel. Pl.'s TRO at 10–11. Other district judges in this Circuit considering similar challenges for terminating certain international students' SEVIS records and F-1 visas have found similar harm and, as a result, have entered at least seven temporary restraining orders to date. Temp. Restraining Order Hr'g Tr. at 2:15–24.[3]

Defendants' arguments to the contrary are unpersuasive. They argue that Sultan has not lost his "ability to complete his academic studies," nor does he "include allegations" that ICE "revoked any employment authorization." Defs.' Opp'n at 13, ECF No. 8 ("Defs.' Opp'n"). Yet Sultan was instructed by OSU on April 3, 2025, to cease all F-1 related activity, including school and work. Ex. 3 at 1. Defendants respond that OSU, not DHS, sent Sultan the April 3 email. Temp. Restraining Order Hr'g Tr. at 17:17–19. But regardless of who sent the email, DHS's own policy is that termination of a noncitizen student's SEVIS record means that they should at least

---

[3] *See also Hinge v. Lyons*, No. 25-1097 (RBW); *Dogan v. Noem*, No. 25-1130 (RBW); *Mashatti v. Lyons*, No. 25-1100 (RJL); *Bushireddy v. Lyons*, No. 25-1102 (SLS); *J.I.O. v. Dep't of Homeland Security*, No. 25-1147 (SLS); *Patel v. Lyons*, No. 25-1096 (ACR); *Nagarapu v. Student and Exch. Visitor Program*, No. 25-1175 (JMC).

lose "all on- and/or off-campus employment authorization." "Terminate a Student," U.S. Dep't of Homeland Security, https://perma.cc/5K2T-2JXD.

Moreover, defense counsel's inability to inform the court of Sultan's current F-1 legal status not only exacerbates Sultan's harm, but also inhibits judicial review. Temp. Restraining Order Hr'g Tr. at 14:17–25, 15:1–5. As an officer of the court, counsel has a duty of candor to answer its questions. *United States v. Bruce*, 89 F.3d 886, 894 (D.C. Cir. 1996) (explaining that the duty of candor applies even if compliance risk disclosure of confidential information and includes the obligation "to avoid making a false statement to the tribunal"). At this juncture, more than two weeks have elapsed since Sultan filed his Complaint and the court is highly skeptical of counsel's representations that Defendants are still waiting for ICE to confirm whether Sultan's presence in the United States is unlawful. Temp. Restraining Order Hr'g Tr. at 13:15–14:3. Therefore, the court will order Defendants to designate a representative to appear at the court's next hearing who can make authoritative representations on behalf of DHS and ICE.

## B. Likelihood of Success

Sultan has also shown a likelihood of success on at least his APA claim that Defendants' actions are arbitrary and capricious, violate DHS regulations, and fail to accord him due process. Pl.'s TRO at 8–9; Compl. ¶¶ 165–75. As an initial matter, terminating Sultan's SEVIS record is likely a final agency action, as it has a potentially severe legal consequence for Plaintiff, who can no longer work and who may have to leave the United States. *Bennett v. Spears*, 502 U.S. 154, 178 (1997) (requiring a two-step inquiry for finality: (i) action must mark the end of the agency's process, and (ii) action must be one from which legal consequences will flow). Defendants point to no legal authority to terminate Sultan's SEVIS record based on his expunged, and indeed, dismissed April 2024 charges. Defs.' Opp'n at 5–18. Consequently, OSU's notification to Sultan on DHS's behalf that his SEVIS record termination was because he was "identified in [a] criminal

records check" does not appear to be based on reasoned decision making, and therefore may be arbitrary and capricious. Ex.3 at 1; 5 U.S.C. § 706(2)(A). Even though Defendants refuse to confirm whether Sultan's F-1 legal status is terminated, it is reasonable to assume that it is, because his visa has been revoked and his SEVIS record terminated, in which case Defendants have violated 8 C.F.R. § 214.1(d) by not following its own regulation before doing so. And because the APA provides for due process, Defendants' failure to provide Sultan with an opportunity to be heard regarding his SEVIS record termination also indicates a likelihood of success on the merits. 5 U.S.C. § 706(2)(D).

## C. Balance of Equities and Public Interest

Finally, the balance of equities and public interest tip in favor of granting a temporary restraining order. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (stating that the equities and public interest are "one and the same" when the government is the non-movant). Sultan risks deportation or accrual of unlawful presence; in contrast, DHS is not harmed by temporarily reactivating Sultan's SEVIS record pending further review of this case's merits.

Accordingly, to preserve the status quo, the court will grant Sultan's Motion insofar that it seeks his SEVIS record be returned to "Active" as of April 3, 2025, and that Defendants be enjoined from modifying Sultan's SEVIS record based on his April 23, 2024, arrest at OSU. Pl.'s TRO at 14–15.

## IV. CONCLUSION

For the foregoing reasons, the court will GRANT IN PART and DENY IN PART Plaintiff's Motion for a Temporary Restraining Order. A corresponding order will follow shortly.

Date: April 24, 2025

_Tanya S. Chutkan_
TANYA S. CHUTKAN
United States District Judge